In re PERRY'S ESTATE.
STATE BOARD OF EQUALIZATION, Appellant, v.
FALL, Respondent.
No. 8765.
Submitted November 18, 1947. Decided April 15, 1948.
192 Pac. (2d) 532.

Mr. R. V. Bottomly, Atty. Gen., Mr. Alfred F. Dougherty, Asst. Atty. Gen., and Mr. H. O. Vralsted, of Helena, for appellant. Mr. Vralsted argued the cause orally.

Mr. Victor H. Fall, of Helena, pro se. Mr. Fall argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff has appealed from an order determining that no

inheritance tax is due to the state of Montana from the estate of David Perry, deceased.

David Perry died on February 6, 1946, a resident of California. At the time of his death he was a member of a partnership composed of himself, Owen H. Perry, William M. Perry and John W. Schroeder. The partnership was engaged in dredging operations in Lewis and Clark county, Montana.

The case turns upon the question whether certain real and personal property in Montana constituted property of the partnership or whether it was owned by the individuals named above as tenants in common, and if partnership property, whether it was tangible or intangible property.

The record before us shows that in December 1938 Perry-Schroeder Mining Company, Inc., conveyed by deed to David Perry an undivided 3750/10,000 interest in and to all of the property and assets of the first party, real, personal and mixed, and wheresoever situated, including "certain specifically described lands, mining claims, leases on land for placer mining purposes, rights of way and power line," certain water rights, and "all dredges, mining machinery, tools, equipment and supplies now owned or used by said corporation."

All of the above described property has at all times been situated in Montana.

The same deed conveyed to Owen H. Perry an undivided 2500/10,000 interest; to William M. Perry an undivided 1250/10,000 interest and to John W. Schroeder an undivided 2500/10,000 interest. The deed made no mention of a partnership. However, on October 30, 1939, the partners entered into an amended partnership agreement as follows:

"Amended Articles of Partnership of
 Perry-Schroeder Mining Company
"We, David Perry of Seattle, Washington, John W. Schroeder, Owen H. Perry and William M. Perry of Helena, Montana, do hereby associate ourselves as co-partners, and do hereby mutually covenant and agree, each with the others, to articles of partnership as follows, to-wit:

"1. The copartnership firm name shall be 'Perry-Schroeder Mining Company.'

"2. The business of the copartnership shall be, and be confined to taking over the property and assets of Perry-Schroeder Mining Company, Inc., (a Montana corporation), placer mining on the so-called Eldorado Bar in Lewis and Clark County, Montana, including the owning, leasing and working of placer mining grounds in and in that locality, the acquiring of placer mining machinery and equipment, and the borrowing of money for such purposes, including the assumption of the debts of said corporation; also including such business as may be incident to the conduct of such placer mining industry, and the pledging, mortgaging, exchange or sale of the partnership property.

"3. The respective interests of the several partners in the partnership property and business shall be as follows: David Perry, 18¾ per cent; John W. Schroeder, 43¾ per cent; Owen H. Perry, 25 per cent; Wiliam M. Perry, 12½ per cent.

"4. Upon any disputed question in the management of the partnership business or property, the majority in partnership interest (as distinguished from number of partners) shall control the action of the partnership, and the partnership shall exist and continue so long as it has any indebtedness to Reconstruction Finance Corporation and as much longer as all the partners may desire.

"5. These amended articles of partnership differ from the original only in the respective interests of David Perry and John W. Schroeder.''

David Perry left a will which was filed for probate in California where he also left some property. Ancillary proceedings followed in this state. The inventory and appraisement filed in the ancillary proceedings listed decedent's property in Montana as follows:

"Property of Perry-Schroeder Mining Co., a partnership.

*Real Property,* in Lewis & Clark County, Montana:

Parcel #1: SW¼SE¼, SW¼ of Section 3;

Pt S½ Section 4; Pt N½SE¼ and Lot 9 of

Section 5; and NE¼, NE¼NW¼, and Pt lots 6 and 9 in Section·9; all in Township 11 North, Range 2 West, M. P. M. $ 3,875.00

Parcel #2; All North of Missouri River, Section 10, NW¼, Pt NW¼SW¼, N½SE¼, Lots 1, 2, 3, and 4 less 10 acres, Section 11, All in Township 11 North, Range 2 West, M. P. M. 2,670.00

Improvements on above Realty 5,880.00

*Personal Property:*

| | |
|---|---|
| Portable Houses | 18,200.00 |
| Cash | 5,965.36 |
| Petty Cash | 25.00 |
| U. S. Bonds | 25,068.75 |
| Accounts Receivable | 847.70 |
| Prepaid Insurance | 620.34 |
| Ditcher made by Company | 250.00 |
| RD-7 Caterpillar 1940 | 4,900.00 |
| Carryall Scraper | 750.00 |
| 3 only 40 H. P. Ingersoll-Rand Motor pumps 500 G. P. M. at 225 T. D. H. | 1,032.00 |
| 1 only 15 K V A Transformer | 101.00 |
| 2 only 7½ K V A Transformers | 132.00 |
| 2 only 50 K V A Transformers | 682.00 |
| 47520 feet #8 Bare Copper Wire 2376 lbs. | 238.00 |
| 1 only International Model C-60 Dump truck 156″ wheel base 1935 | 1,363.00 |
| 1 only Ford ½ ton Pickup 1941 | 445.00 |
| 1 only 300 Amp Lincoln Welder | 250.00 |
| 1 only Kirk Hillman 6″ Drill | 1,300.00 |
| Shop Equipment including all major equipment, small tools and gold melting equipment | 2,850.00 |
| 1 only 6 Cu. ft. Yuba Dredge | 112,000.00 |

189,445.15

Less Taxes due and owing at time of death of
 decedent 1,126.65

 188,318.50
Value of the interest of David Perry, above named decedent, and a partner in the Perry-Schroeder Mining Company—18¾ ................................................................................................35,309.72.''

The final report and petition of defendant administrator filed with the state board of equalization to have determined the inheritance tax due alleges in substance: That testator was a resident of the state of California; that the appraised value of his real estate is $2,329.69; that his personal property consists of $1,118.50 in cash and other personal property of the appraised value of $32,072.78; that his gross estate outside of Montana amounts to $99,184.47; that his gross estate in Montana amounts to $2,329.69 (being the appraised value of his real estate in Montana); that his gross estate wherever situate amounts to $101,514.17; that the undivided 18.75% owned by decedent at the time of his death in the Perry-Schroeder Mining Company, Inc., a partnership, appraised at $33,191.28 exclusive of the value placed on the real property, is intangible personal property within the meaning of Chapter 3, Montana Session Laws 1945, and therefore exempt from the payment of inheritance tax; that the widow of decedent is entitled to an exemption of $17,000 under the laws of Montana and that no inheritance tax is due the state of Montana from the estate or from the beneficiary thereof.

The state board of equalization on behalf of the state of Montana served and filed verified objections to the administrator's final report and petition, alleging among other things: That the report and petition are incorrect and at variance with the inventory and appraisement in variously specified and enumerated respects; that the inventory shows that the property therein listed and evaluated is the property of the Perry-Schroeder Mining Company, Inc., a mining partnership; that the testator, David Perry, owned an undivided 18.75% of all

such property, appraised at $35,509.72; that testator together with Owen H. Perry, William M. Perry and John W. Schroeder comprise the mining partnership; that they own certain mining claims and leased other mining claims and other property, all situate in Lewis and Clark county, Montana, which they worked and mined for a period of more than five years next preceding decedent's demise, and from which they extracted minerals and derived great profit; that the decedent, his two brothers and Schroeder were jointly engaged in working the mines; that they owned all the property listed and described in the inventory and appraisement as tenants in common; that they owned a certain Yuba dredge listed and appraised at $112,000 located upon the mining claims and property so owned, occupied, mined and worked by them and which they used up to the date of decedent's death in extracting gold and minerals from the mining claims and property in which decedent at the time of his death possessed and owned an undivided interest as tenant in common; that at the time of decedent's death the dredge was mining property placed on the described mining ground and actually used by its owners in mining and extracting minerals and for working and developing the mines; that the dredge is real property and at the time of decedent's death was affixed to the mining claims and real property; that the mining partnership was solvent and all debts were paid; that all the property listed in the inventory and appraisement remained on hand at the time of decedent's death and that he then owned an interest in the whole of the property as such tenant in common; that upon the death of David Perry, the mining operations were discontinued by the owners without any agreement to resume and that there is due the state of Montana inheritance tax upon each item of property so listed in the inventory and appraisement.

There was no denial of the allegations of the state's objections.

On March 25, 1947, a hearing was had on the administrator's final report and petition and the state's objections thereto. At the hearing the state, without objection, introduced documentary

evidence in support of the allegations of its formal objections, but no proof either oral or documentary was introduced by the administrator in support of the disputed statements of his report and petition and the cause was submited to the court.

On May 8, 1947, on application of the administrator the case was reopened to permit him to introduce further testimony. Upon final submission the court found no inheritance tax due to the state from the estate.

To sustain the court's conclusion the administrator takes the position that the property involved constituted assets of the partnership of which the deceased was a member and that in consequence the property passing to the heirs constitutes intangible property exempt from inheritance tax because of Chapter 3, Laws of 1945.

We agree that the property at the time of decedent's death and prior thereto was a part of the assets of the partnership. That it was used in carrying on the partnership business is undenied.

The individuals owned most of the property involved before the formation of the partnership. They acquired it by deed from the corporation without any mention that it was partnership property as stated in section 6681. It was presumptively an interest in common held by each of the grantees. Sec. 6683, Rev. Codes 1935, and see 47 C. J. 757; Ivins v. Hardy, Mont., 179 Pac. (2d) 745.

As far as purchasers and creditors are concerned they had the right to rely on the title to the real estate as shown by the record. 40 Am. Jur., p. 194, sec. 95. But as between the parties themselves the controlling consideration as to whether the property belongs to the partnership is the intention of the parties. Generally speaking there is a presumption that the ownership of real estate is where the muniment of title places it. But "If, by all the circumstances attending the transaction, it is made to appear that in the intention of the parties it was purchased for and was treated as partnership property, the presumption of ownership arising from the face of the deed will

be overcome, and the property will be treated as belonging to the partnership.'' And ''An agreement that certain real estate should be part of the firm assets may be implied from the acts and conduct of the parties.'' 40 Am. Jur., p. 197.

The rule is stated in Robinson Bank v. Miller, 153 Ill. 244, 38 N. E. 1078, 1081, 27 L. R. A. 449, 46 Am. St. Rep. 883, as follows:

''The weight of authority seems to us to support the position that where persons who afterwards become partners buy land in their individual names and with their individual funds, before the making of a partnership agreement, the land will be regarded as the individual property of the partners, in the absence of a clear and explicit agreement subsequently entered into by them to make it firm property, or in the absence of controlling circumstances which indicate an intention to convert it into firm assets.''

Section 2 of the partnership agreement above quoted shows the clear intent that the property theretofore held by the corporation was to be thereafter considered as partnership property.

In the view that we take of the case it is unnecessary to determine whether the partnership is a general commercial partnership as distinguished from a mining partnership, an issue discussed at length in the briefs of counsel. It is our view that whatever may be the character of the partnership, the property must be included in computing the inheritance tax and is not exempt under Chapter 3, Laws of 1945. Chapter 3, Laws of 1945, in legal effect exempts intangible personal property of a non-resident decedent from inheritance tax when the laws of the state of the residence allow a reciprocal exemption to residents of Montana. California has such a reciprocal law, and it is the contention of defendant that the partnership interest of the decedent is intangible personal property.

The cases relied upon as sustaining the contention that the property is intangible and hence exempt under Chapter 3, Laws of 1945, are Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749, and Wootten v. Oklahoma Tax Commission,

185 Okl. 259, 91 Pac. (2d) 73. The Wootten case simply followed the Blodgett case. We are not impressed with the reasoning of the court in the Blodgett case and therefore decline to follow it. We have heretofore refused to blindly follow determinations of that court as to rules of property rights in this state. Gas Products Co. v. Rankin, 63 Mont. 372, 207 Pac. 993, 24 A. L. R. 294. The court in the Blodgett case [277 U. S. 1, 48 S. Ct. 414], said: ''It is very plain, therefore, that the interest of the decedent in the partnership of William Openhym & Sons was simply a right to share in what would remain of the partnership assets after its liabilities were satisfied. It was merely an interest in the surplus, a chose in action. It is an intangible, and carries with it a right to an accounting.''

Whether property is tangible or intangible depends upon its nature and characteristics and not upon the circumstance that an accounting must be had to determine the surplus. If the court's conclusion in the Blodgett case be correct then all property of a decedent dying intestate is intangible because the interest of the decedent in his own estate is only that remaining after the payment of the debts, expenses of last illness and of administration. The same is true of a person leaving a will except perhaps as to specific devises or bequests.

In the Blodgett case the court correctly held that an inheritance tax is not a tax upon property but upon the right or privilege of succession to the property of a deceased person. This is the holding of this court also. Gelsthorpe v. Furnell, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170; In re Touhy's Estate, 35 Mont. 431, 90 Pac. 170; State v. Jones, 80 Mont. 574, 261 Pac. 356, 60 A. L. R. 551; State v. Walker, 70 Mont. 484, 226 Pac. 894. The court in the Boldgett case was too much concerned with the character of the property of the decedent in his own estate and not enough concerned with the character of the property passing to the heir.

If the tax is one upon the right to receive, then whether the property be tangible or intangible depends upon what the heir receives. It is his right that must be looked to and it is of no

moment that the decedent's right or interest cannot be measured without an accounting.

Under the laws of Montana when a partner dies the property ▮ passes to the surviving partner who settles the affairs of the partnership and accounts to the administrator. Sec. 10261, Rev. Codes 1935. Until the affairs of the partnership have been settled the partnership property is not property of the estate of the deceased party to be administered as such. White v. Prahl, 94 Mont. 345, 22 Pac. (2d) 315.

Here there is no denial of the allegation that all debts of the ▮ partnership have been paid and that the property mentioned in the inventory and appraisement remains on hand. The law is well settled that when the partnership is settled and the debts are paid, the real estate of the partnership retains its character as such and is held by the owners as tenants in common. We announced this rule as early as 1887 in the case of Lindley v. Davis, 7 Mont. 206, 210, 14 Pac. 717, 718; wherein this court said: "The conversion of real property into personalty is a devise of equity, in order to effectuate the settlement of partnerships. The rule [ceases] when the partnership is settled and its debts are paid. The partners then hold their real estate as tenants in common, relieved of any trust in behalf of the partnership. The weight of American authorities sustains this doctrine." This is the view of the courts and textwriters generally.

Thus in 40 Am. Jur., page 330, section 291, it is said: "The rule adhered to by the great weight of authority in the United States, as commonly stated, is that although partnership real estate is in equity regarded as personal property so far as is necessary for the purpose of settling and paying the debts of the partnership and adjusting the equities of the partners, the residue, if any, after satisfying such obligations, resumes or retains its former character as real estate, and must, for purposes of descent and distribution, be treated as realty, so as to go to the heir at law, rather than as personalty which would pass to the personal representatives of the deceased partner; or,

as the rule is sometimes stated, on the dissolution of a partnership by the death of a partner, the share of the deceased partner in the real estate descends as such to the heirs, subject to equity of the surviving partner or partners to have it appropriated to accomplish the trust to which it was primarily subjected.'' And see the note in 25 A. L. R. 389.

In Darrow v. Calkins, 154 N. Y. 503, 49, N. E. 61, 64, 48 L. R. A. 299, 61 Am. St. Rep. 637, the court said: ''The clear current of the American decisions supports the rule that, in the absence of any agreement, express or implied, between the partners to the contrary, partnership real estate retains its character as realty with all the incidents of that species of property between the partners themselves, and also between a surviving partner and the real and personal representatives of a deceased partner, except that each share is impressed with a trust implied by law in favor of the other partner that, so far as is necessary, it shall be first applied to the adjustment of partnership obligations and the payment of any balance found to be due from the one partner· to the other on winding up the partnership affairs. To the extent necessary for these purposes the character of the property is, in equity, deemed to be changed into personalty. On the death of either partner, where the title is vested in both, the share of the land standing in the name of the deceased partner *descends as real estate to his heirs,* subject to the equity of the surviving partner to have it appropriated to accomplish the trust to which it was primarily subjected. The working out of the mutual rights which grew out of the partnership relation does not seem to require that the character of the property should be changed until the occasion arises for a conversion, and then only to the extent required. The American rule commends itself for its simplicity. It makes the legal title subservient in equity to the original trust. It disturbs it no further than is necessary for this purpose. The portion of the land not required for partnership equities retains its character as realty, and it leaves the laws of inheritance and descent to their ordinary operation.'' (Emphasis supplied.)

To the same effect is Mechem on Partnerships, 2nd Ed., section 402.

As above noted the partnership real estate will be treated as personal property in the settlement of the partnership affairs "but the principle of equitable conversion has no further application." Riddle v. Whitehill, 135 U. S. 621, 10 S. Ct. 924, 928, 34 L. Ed. 282. And see to the same effect 47 C. J. 765.

And as to personal property it is only so much thereof as is ▮▮▮▮ necessary to discharge the duties imposed upon the survivor that passes to him (Silver v. Eakins, 55 Mont. 210, 175 Pac. 876) and the balance of the partnership property should be divided between the surviving partners and the heirs of the deceased partner. It still retains its character as tangible property if such it was at the date of the death of the partner.

The correct rule was announced in the case of In re Small's Estate, 151 Pa. 1, 25 A. 23, 24. There a testator bequeathed to his two brothers "all my interest in the partnership association of P. A. & S. Small, Limited, and in all the property, real and personal, notes, stocks, bonds, and accounts of said partnership association"

The court held this bequest was of tangible, not intangible, property, saying: "The partnership property was largely made up of lands, merchandise, flour, grain, and other personal property, which had a visible and tangible existence, and an actual situs, in this state. As was said by Comstock, C. J., in Hoyt v. Commissioners of Taxes, 23 N. Y. 224, 228; 'The fiction or maxim mobilia personam sequuntur is by no means of universal application. Like other fictions, it has its special uses. It may be resorted to when convenience and justice so require. In other circumstances, the truth, and not the fiction, affords, as it plainly ought to afford, the rule of action. * * * I can think of no more just and appropriate exercise of the sovereignty of a state or nation over property situated within it, and protected by its laws, than to compel it to contribute towards the maintenance of government and law.' * * * As a general rule, intangible personal property of a nonresident, such as bonds,

mortgages, and other choses in action, is governed, as to its situs, by the fiction of law above noticed; and hence such property is not subject to collateral inheritance taxation under our laws, because it is not 'situated within this state.' \* \* \* The facts of this case, however, are different, and bring it within the exceptions to the fictitious rule. In the formation, location, etc., of their partnership association the testator and his brothers evidently established the situs of the personal property which constituted its capital. They organized the association under the laws of this state, located its principal office and conducted its business therein, and thus enjoyed the benefit of the law and protection of the state and local government. In such circumstances, as remarked in Hoyt v. Commisisoners of Taxes, supra, the truth and not the fiction plainly affords the rule of action. Neither convenience nor justice requires us to resort to the fictitious rule.''

The court then concluded by saying: ''For these and other reasons that might be suggested we think the learned judge was right in concluding that the interest bequeathed to appellants was tangible personal property, having an actual situs within the state, receiving the benefit and protection of its laws, during testator's lifetime and since, and therefore subject to payment of collateral inheritance tax.''

The court erred in finding and ordering that no inheritance tax is due the state of Montana from the above estate. The order is accordingly reversed and the cause remanded for further proceedings in conformity with this opinion.

Associate Justices Choate and Metcalf concur.

MR. CHIEF JUSTICE ADAIR (concurring in result).

I concur in the result announced in the majority opinion but not in all that is said therein.

*The Facts.* David Perry died testate in the state of California leaving property of the total appraised value of $134,494.19. Testator's will was filed and admitted to probate in the state of California whereof he claimed to be a resident and ancillary probate proceedings were instituted in the district court of Lewis

and Clark county, Montana, wherein respondent was appointed administrator with will annexed. The inventory and appraisement filed in said district court lists testator's property in Montana as an undivided 18.75% of certain specifically enumerated real and personal property appraised at $189,445.15, situate in Lewis and Clark county, Montana, and represented to be partnership property in which testator's undivided interest therein was appraised at $35,309.72.

In his final report and petition to the state board of equalization for determination of inheritance tax, respondent administrator represents that, except for real estate appraised at $2,329.69, testator's property in Montana consists wholly of intangible personal property the transfer of which is claimed to be exempt from the payment of inheritance tax to the state of Montana under the provisions of Chapter 3 of the Montana Session Laws, 1945, which provides:

"Section 1. The tax imposed by Section 10400.1, Section 10400.2, Section 10400.3, Section 10400.11 and Section 10400.15 of the Revised Codes of Montana, 1935 in respect of personal property, except tangible personal property having an actual situs in this State, shall not be payable:

"(1) If the decedent is a resident of a state or territory of the United States which at the time of the transfer did not impose a transfer tax or death tax of any character in respect of personal property of residents of this State, except tangible personal property having an actual situs in that state or territory; or

"(2) If the laws of the state or territory of residence of the non-resident decedent at the time of the transfer contained a reciprocal provision under which non-residents of that state were exempted from transfer tax or death taxes of every character in respect of personal property, except tangible personal property having an actual situs in that state, providing the state or territory of residence of such non-resident decedent allowed a similar exemption to residents of this State."

Clearly the foregoing Act has no application to the transfer

of any real property or of any tangible personal property having an actual situs in this state. To come within the exemption provided for in the Act the transfer must be of intangible personal property having no actual situs in the state of Montana.

Death effected a transfer of testator's property to the beneficiary under his will. Whether such transfer of testator's property in Montana is exempt from the payment of inheritance tax under the provisions of Chapter 3, Laws of 1945, supra, depends upon the character of the property so transferred.

Property is either real or personal. Sec. 6666, Rev. Codes 1935.

Real property consists of (1) land, (2) that which is affixed to land, (3) that which is incidental or appurtenant to land, and (4) that which is immovable by law. Sec. 6667, Rev. Codes.

Every kind of property that is not real is personal. Sec. 6672, Rev. Codes.

By law, flumes, hose, pipes, blacksmith shops, mills and all other machinery or tools used in working or developing a mine, including dredges placed on mining ground and used for working and developing the mine, are deemed affixed to the mine so that they become a part of the real property. Sec. 6670, Rev. Codes 1935; Caird Engineering Works v. Seven-up Gold mining Co., 111 Mont. 471, 111 Pac. (2d) 267; Story Gold Dredging Co. v. Wilson, 106 Mont. 166, 76 Pac. (2d) 73; Britannia Mining Co. v. United States Fidelity & Guaranty Co., 43 Mont. 93, 115 Pac. 46; Dietrich v. Martin, 24 Mont. 145, 60 Pac. 1087, 81 Am. St. Rep. 419; Montana Electric Co. v. Northern Valley Mining Co., 51 Mont. 266, 153 Pac. 1017.

"A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage for light, air, or heat from or across the land of another." Sec. 6671, Rev. Codes.

"An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing subscribed by the party disposing of the same, or by his agent thereunto author-

ized by writing." Sec. 6859, Rev. Codes 1935. See also sec. 10611, Rev. Codes.

The character of the ownership of property is to be determined from the mode of its acquisition.

The bulk of the property listed in the inventory and appraisement incorporated in the majority opinion herein was acquired in December 1938 by the testator, his two brothers and John W. Schroeder, as grantees, by and through a deed from Perry-Schroeder Mining Company, Inc., as grantor, which deed reads:

"This indenture, Made and delivered this 5th day of December, 1938, by and between Perry-Schroeder Mining Company, Inc., a Montana corporation with principal place of business at 26 West' Sixth Avenue, Helena, Montana, as first party, and David Perry of Seattle, Washington, as second party, Owen H. Perry of Helena, Montana, as Third Party, Wm. M. Perry of Helena, Montana, as fourth party, and John W. Schroeder of Helena, Montana, as fifth party, witnesseth:

"That for and in consideration of the sum of One Dollar ($1.00), together with other good and valuable considerations, the receipt of which by the first party from each of the other parties hereto is hereby acknowledged, the first party does hereby grant, bargain, sell, warrant and convey unto said second party an undivided 3750/10,000 interest, unto said third party an undivided 2500/10,000 interest, unto said fourth party an undivided 1250/10,000 interest, and unto said fifth party an undivided 2500/10,000 interest, of, in and to all of the property and assets of the first part, real, personal and mixed, and wheresoever situated, including, among other property, the following:

"United States Mineral Entry No. 1646 in Sections three (3), Four (4), Five (5), Nine (9), Ten (10) and Eleven (11), in Township Eleven (11) North, of Range Two (2) West, M. P. M. in Lewis and Clark County, Montana, save that part of said Mineral Entry quitclaimed by William M. Perry to The Montana Power Company by deed of date May 19, 1937, and recorded in Book 117 of deeds at page 75, of the records in the office of the County Clerk and Recorder for said County;

"Also the Northeast quarter of the northeast quarter (NE¼ NE¼) of section ten (10), in Township Eleven (11) North, of Range Two (2), west, of the Principal Meridian, Montana, containing forty (40) acres, subject to that said certain reservation in Patent No. Helena 013354 and reading as follows:

" 'Subject to any vested and accrued water rights for mining, agriculture, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts; and there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States. Reserving unto the United States, its permittee or licensee, the right to enter upon, occupy and use any part or all of that portion of said land lying within 90 feet of the center line of the transmission line right of way of the Great Falls Power Company for the purposes provided in the Act of June 10, 1920, (41 Stat. 1063 [16 U. S. C. A. sec. 791a et seq.]) and subject to the conditions and limitations of section 24 of said act, as amended by the act of August 26, 1935 (49 Stat. 846 [16 U. S. C. A. sec. 818]).'

"Also the N½ of the NW¼, and the NW¼ of the NE¼, and the W½ of the SW¼ of the NE¼ and the W½ of the E½ of the SW¼ of the NE¼ of section 11, in Township 11 north, of Range 2 West.

"Also that certain unpatented placer mining claim situated in the County of Lewis and Clark, State of Montana, and particularly described as, the south half of the northeast quarter (S½NE¼) and the west half of the southeast quarter (W½-SE¼) of section five (5) in township eleven (11) north, range two (2) west, M. P. M., notice of location of which was recorded July 10, 1937, in the book 'O' of placers at page 289, of the records in the office of the County Clerk and Recorder for said Lewis and Clark County,

"All situated in the County of Lewis and Clark, State of Montana;

"Also right of way and power line now constructed thereon between Hauser Dam on the Missouri River and said mineral entry;

"Also, 2. That certain lease agreement of date March 1st, 1937, recorded in Book 36 of miscl., page 291, of the records in the office of said Clerk and Recorder, between The Montana Power Company and Perry-Schroeder Mining Company, (a co-partnership), leasing for placer mining purposes a part of said Mineral Entry No. 1646, as said lease is modified by correction agreement recorded at page 298 of said Book 36 of Miscellaneous Records;

"Also all dredges, mining machinery, tools, equipment and supplies now owned or used by said corporation;

"Also any and all right, title, claim and interest which the party of the first part has in and to the waters of Soup Creek and Trout Creek in said Lewis and Clark County;

"Also all other lands and personal property of every kind and character, and wheresoever situated, owned by said corporation or in which it may have an interest.

"This conveyance is made subject to the lien and rights of reconstruction finance corporation, its successors and assigns, under that certain trust indenture and mortgage executed by first party hereto to reconstruction finance corporation under date of May 18, 1938, recorded in book 47 of mortgages at page 316, and filed as a chattel mortgage in the records of the office of said County Clerk and Recorder, and to the debt thereby secured or intended to be secured, which said mortgage indebtedness the grantees hereunder jointly and severally assume and promise to pay.

"In witness whereof, the first party hereto has caused its corporate name and seal to be hereunto affixed, pursuant to resolution of its Board of Directors and resolution of its stockholders in meeting, by its proper officers, hereto duly authorized, the day and year in this instrument first above written.

"Perry-Schroeder Mining Company, Inc.

"By David Perry

---

 "Its President

"ATTEST:

"John W. Schroeder

---

 "Secretary.

 (Duly Acknowledged.)

"(Corporate Seal)

 Filed December 12, 1938."

The above deed created for the testator, David Perry, as grantee, "an *undivided* 3750/10,000 interest * * * of, in and to all the property" of the grantor corporation. The word "undivided" in the deed indicates an intention that the grantees shall hold in cotenancy with the grantor or its successors in interest. See 16 Am. Jur., Deeds, page 577, note 16; Gratz v. Land & River Imp. Co., 7 Cir., 82 F. 381, 40 L. R. A. 393; 3 Bouvier's Law Dictionary, Rawle's 3rd Revision, page 3352; Black's Dictionary of Law, 3rd Ed., page 1777.

In the deed creating the undivided interests in favor of testator and the three other persons named therein as grantees, there is no declaration that in any wise or manner indicates that the unequal and separately designated interests were acquired by the four grantees in partnership for partnership purposes nor does the deed expressly or otherwise declare the transfer to the grantees to be a joint tenancy. Secs. 6680 and 6681, Rev. Codes 1935. It therefore follows as a matter of law that each interest created by the deed in favor of the several persons in their own right is an interest in common. Secs. 6682 and 6683, Rev. Codes. See Hochsprung v. Stevenson, 82 Mont. 222, 266 Pac. 406; Isom v. Larson, 78 Mont. 395, 255 Pac. 1049; Rodda v. Best, 68 Mont. 205, 217 Pac. 669; Mullins v. Butte Hardware Co., 25 Mont. 525, 65 Pac. 1004, 87 Am. St. Rep. 430; United States v. Northern Pac. R. R. Co., 6 Mont. 351, 12 Pac. 769.

A tenant in common owns an undivided interest in the prop-

erty, and the property so owned must be undivided property. United States v. Northern Pac. R. R. Co., supra.

While the ownership of the grantor corporation was sole, sec. 6678, Rev. Codes, and absolute, sec. 6676, Rev. Codes, yet by its deed of conveyance it made the ownership of the four grantees qualified, sec. 6677, Rev. Codes, by granting to them interests in common, sec. 6679, subdiv. 3, Rev. Codes. Thereafter and until a partition takes place or there is a conveyance by the tenants in common vesting the entire title in one person, natural or artificial, the property remains undivided in the eyes of the law.

In a tenancy in common each cotenant buys in, sells out, or encumbers his interest at pleasure, regardless of the knowledge or consent or wishes of his co-owners, and without affecting the legal relation between them beyond the going out of one and the going in of another.

In the case before us there was no transfer or conveyance by the tenants in common vesting the entire interest in a single person, sec. 6676, Rev. Codes. The ownership of the property therefore continued to be qualified, sec. 6677, and vested in four co-owners as tenants in common, secs. 6682 and 6683.

There was no transfer or conveyance by David Perry in his lifetime, of his undivided 3750/10,000 interest or any part thereof in the described property. Accordingly, upon testator's death, the legal title to said real property passed under his will to his devisee. Had there been no will the legal title to the real property so left by decedent would have passed to and become vested in his heirs at law.

After the delivery to them of the deed of December 5, 1938, the four co-owners operated a certain Yuba dredge and other machinery, tools and equipment located upon the mining claims and lands so owned or leased by them which dredge, machinery, tools and equipment they actually used in working, developing, mining and in extracting gold and other minerals from said mining claims and property up to the date of the death of testator.

Almost eleven months after the co-owners acquired the legal title to the mining claims, leases and other real property described in the deed of conveyance, they entered into and executed the amended articles of partnership incorporated in the majority opinion, associating themselves as copartners and expressly stipulating that such copartnership shall be limited to and that it shall "be confined to taking over the property * * * of Perry-Schroeder Mining Company, Inc., * * * placer mining on the so-called Eldorado Bar in Lewis and Clark County, Montana, including * * *. such business as may be incident to the conduct of such placer mining industry."

The articles merely indicate that the four subscribing persons owning mining claims and property associated themselves in the business of placer mining in Lewis and Clark county, Montana, and that their respective interests in the business shall be the same and in the same proportion as the respective undivided interest conveyed to each by said deed of December 5, 1938. The articles are silent with respect to sharing in the losses of the placer mining venture. Thus there is nothing in the above amended articles of partnership to indicate that the association of the four co-owners in the enterprise was not purely a mining partnership as defined in sections 8050 and 8051, Rev. Codes.

"A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engaged in working the same." Sec. 8050, Rev. Codes.

"Generally, a mining partnership exists whenever several owners agree or unite to operate or work a mine, whether they are tenants in common or owners in any other relation." 36 Am. Jur., Mines and Minerals, p. 393, sec. 159, notes 6 and 7.

"An express agreement to become partners or to share the profits and losses of mining is not necessary to the formation and existence of a mining partnership. The relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the minerals therefrom." Sec. 8051, Rev. Codes.

In Kahn v. Central Smelting Co., 102 U. S. 641, 26 L. Ed. 266, the court said: "Mining partnerships as distinct associations, with different rights and liabilities attaching to their members from those attaching to members of ordinary trading partnerships, exist in all mining communities; indeed, without them, successful mining would be attended with difficulties and embarrassments, much greater than at present. In Skillman v. Lachman, 23 Cal. 198, 83 Am. Dec. 96, the question of the relation existing between parties owning several interests in a mine came before the Supreme Court of California, and that court said that 'Whatever may be the rights and liabilities of tenants in common of a mine not being worked, it is clear that where the several owners unite and cooperate in working the mine, then a new relation exists between them; and, to a certain extent, they are governed by the rules relating to partnerships. They form what is termed a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but also by some rules peculiar to itself, one of which is that one person may convey his interest in the mine and business without dissolving the partnership.' 23 Cal. at page 203. * * * Associations for working mines are generally composed of a greater number of persons than ordinary trading partnerships; and it was early seen that the continuous working of a mine, which is essential to its successful development, would be impossible, or at least attended with great difficulties, if an association was to be dissolved by the death or bankruptcy of one of its members or the assignment of his interest. A different rule from that which governs the relations of members of a trading partnership to each other was, therefore, recognized as applicable to the relations to each other of members of a mining association. The delectus personae, which is essential to constitute an ordinary partnership, has no place in these mining associations. (Citing cases.)"

In 36 Am. Jur., Mines and Minerals, page 393, section 159, it is said: "A mining partnership, like any other partnership, may be created by express contract of the parties, but it is not

necessary, in order to effect its formation or to continue its existence, that there be an express agreement to become partners or to share the profits and losses of the mining. The existence of such a partnership may be inferred from the acts of the parties and the circumstances appearing in the case.''

''Where tenants in common of mines or leases become partners with reference to the operation thereof, the presumption is that there is a mining partnership, rather than an ordinary general partnership, in the absence of an express agreement forming the latter, but such an agreement need not be proved by the express words of the parties and may be established by their acts and conduct.'' 40 C. J. 1145, notes 92 and 93.

Where the actual working of the mine has ceased, the relation of the co-owners is that of tenants in common and no more. Harris v. Lloyd, 11 Mont. 390, 28 Pac. 736, 28 Am. St. Rep. 475.

A mining partnership unlike an ordinary or general partnership is not dissolved when the interest of a mining partner passes to another person or persons as upon the death of the mining partner or the transfer of his interest. Southmayd v. Southmayd, 4 Mont. 100, 5 Pac. 318; Harris v. Lloyd, supra; Congdon v. Olds, 18 Mont. 487, 46 Pac. 261.

Upon the death of a partner in a mining partnership the surviving partners have no right to take control of the decedent's interest as surviving partners, this right being one which only exists where there is the delectus personae. Jones v. Clark, 42 Cal. 180.

It is quite clear that in conducting their placer mining operations on placer mining claims and land in which the three Perrys and Schroeder each owned an undivided interest, said co-owners were mining partners. Hence the death of David Perry did not operate to dissolve the mining partnership, and his devisee succeeded to his interest, and occupies the same relative position that David Perry would occupy if alive, namely that of a tenant in common. Boehme v. Fitzgerald, 43 Mont. 226, 115 Pac. 413.

But it is urged that the co-owners formed an ordinary, general

partnership to conduct the mining operations and developments on the placer mine in question. However, a partnership is not a legal entity and it does not exist independent of the partners. State v. Yegen, 74 Mont. 126, 138, 238 Pac. 603.

"All authorities agree that inasmuch as a partnership is not a person, either natural or artificial, it cannot, as such, take or hold the legal title to real estate." 40 Am. Jur., Partnership, p. 193, sec. 93.

"In all cases the presumption is against the inclusion of the real estate in a partnership, and in order that it may be treated as belonging to the partnership, the intention must be clearly manifested. There is also a presumption that the ownership of real estate is where the muniment of title places it." 40 Am. Jur., Partnership, p. 197, notes 8 and 9.

Here the muniment of title, namely the deed of December 5, 1938, from the corporation grantor to the testator and the other three named grantees, places the title to the property conveyed in the grantees as tenants in common.

"The American theory is that the legal title of the partnership realty is held by the copartners as tenants in common, subject in equity to be applied to the payment of the debts of the firm, and that when such debts are paid, all the incidents and qualities of real estate revive; that the trust in favor of the partnership exists only in behalf of partnership objects and liabilities, and these being fully discharged, the legal title is released from all trusts and will descend to the heir as in the case of any other tenancy in common." 14 Am. Jur., Cotenancy, p. 77, sec. 3. Also see the annotation to Goldthwaite v. Janney, 48 Am. St. Rep. at pages 71-74.

In Shearer v. Shearer, 98 Mass. 107, the court considered the circumstances under which an equitable conversion of real estate into personalty is worked for the purpose of adjusting the affairs of a partnership and then said: "But the shares in the body of the partnership property, those interests which are not measured by precise amounts, but consist in a common proprietorship after all special claims are satisfied, stand upon

different footing. These interests are determined by the proportions fixed by the articles or organic law of the partnership. When the beneficial interests and the legal title correspond, it has already been decided that the rights of the partners in real estate so held will be left to adjust themselves by descent of the legal title, with its incidents, as real estate of the several partners, held in common. Wilcox v. Wilcox, supra, 13 Allen, Mass., 252. When the legal title is otherwise held, it is held in trust; and the equitable title descends in like manner and with like incidents, except as to dower. The office of equity in such cases is merely to declare the trusts, and compel the legal title to serve the equitable interests. This is accomplished by directing such conveyances as will make the legal title of the several parties conform to their respective beneficial interests. By the rule above indicated, all partnership rights and obligations are secured, and all equities growing out of that relation are met and answered. To require equitable interference to go further, and convert all real estate into personalty, for the mere purpose of a division, seems to us to be an unnecessary invasion of the rights of the copartners, and, when undertaken in the interest of one class of the representatives of a deceased partner against another class of representatives of the same partner, it seems to be a departure from the legitimate sphere of equitable jurisdiction. It is not the province of equity to seek to counteract or modify the operation of the laws of descent and distribution.''

In the instant case there are no facts nor circumstances that would work a conversion of the real estate of the co-owners into personalty. On the date that David Perry died the mining business and venture in which he was then engaged and which was then being conducted under the name of Perry-Schroeder Mining Company, a partnership, was thoroughly solvent with no debts, with no creditors and with no partnership obligations outstanding. The business then had on hand in cash $5,999.36 and invested in United States bonds the sum of $25,068.75.

Even though the real estate used in the placer mining business conducted by the co-owners under the firm name and style of

Perry-Schroeder Mining Company, a partnership, had been acquired with partnership assets, of which there is no evidence in the record, nevertheless since there were no partnership obligations under the American theory, the realty is regarded as vested in the heirs or devisees of the deceased partner in the same manner as if its owners had been cotenants merely. Summey v. Patton, 60 N. C. 601, 86 Am. Dec. 451; Foster's Appeal, 74 Pa. 391, 15 Am. Rep. 553; Yeatman Heirs v. Woods, 14 Tenn. 20, 27 Am. Dec. 452.

Thus it becomes wholly immaterial to determine whether the testator and his co-owners operated their dredge and mined their placer ground and mining claims as a mining partnership or as an ordinary general partnership. In either event the undivided 3750/10,000 interest or share in the real property conveyed to David Perry by the deed of December 5, 1938, including the dredge, continued and continues to be real property having an actual situs in the county of Lewis and Clark, state of Montana, title of which property stood in testator and since his demise stands in his devisee as a tenant in common.

The majority opinion recognizes that testator and his three associates owned most of the property involved before the formation of the partnership and that presumptively the interest of each co-owner was an interest in common but it then holds that section 2 of the amended articles of partnership shows that the property was intended to be partnership property. Such holding overlooks the facts that the title to the real property was conveyed by the corporation to testator and his three associates by the deed of December 5, 1938; that the amended articles of partnership were not executed until more than ten months after the grantees acquired their title and that such articles contain no words of conveyance nor do the articles constitute a muniment of title acquired by the testator for the property in question. For a deed of conveyance. See Hochsprung v. Stevenson, 82 Mont. 222, at page 235, 266 Pac. 406. The one and only muniment of title acquired by the testator for the property in question is the deed from the corporation to himself and the three

other grantees and the legal title still remains where it is there placed as to all the grantees except the testator whose undivided interest in the real property has now passed to his devisee.

To determine the character and intent expressed in a written instrument it must be taken "by its four corners" and the character and intent must be there disclosed by the language employed in the writing itself (Hochsprung v. Stevenson, supra) and not by parol testimony given after the death of one of the signers by two of the survivors and the scrivener who drafted the instrument. The admission of such testimony over the proper and timely objections of the state was clearly error.

Parol evidence cannot be received to add to, limit, vary or contradict the terms of a written contract of partnership nor to show the understanding of the parties as to the effect of the contract, the terms of which are not ambiguous, or to show that the contract was intended to have an operation different from that imported by its terms. The law is as stated in 32 C. J. S., Evidence, sec. 909, namely: "A written contract of partnership cannot be extended, limited, or otherwise varied by parol evidence to show that the true relation of the parties or their rights and liabilities are different from those appearing in the written instrument, for all of their prior negotiations and agreements with respect to the proposed partnership are merged in the articles of partnership.".

Again, in 32 C. J. S. Evidence sec. 794, it is said: "It is elementary law that where the title to real property is in issue, the deeds, patents, wills, mortgages, or other muniments of title constitute the best evidence, and parol evidence is not admissible to prove title unless their absence is satisfactorily explained."

The bulk of the estate owned and left in Montana by the testator consists of the undivided interest in real property having its actual situs in Lewis and Clark county, Montana, transferred to the testator by the deed from the corporation of December 5, 1938. At no time during his lifetime did the testator subscribe or execute any deed of conveyance to any part of said real property so acquired by him and it remained

real property still having its actual situs in the county of Lewis and Clark, state of Montana, the transfer whereof on the death of testator was taxable as tangible property having an actual situs in this state.

In addition to the aforesaid real property the testator, at his death, owned an undivided interest in cash in the amount of $5,999.36, in United States bonds in the amount of $25,068.75 and in accounts receivable amounting to $847.70, all of which undoubtedly represent surplus on hand or earnings from the placer mining business so systematically and continuously carried on and conducted for years in Lewis and Clark county, Montana, on placer mining ground therein situate, all of which property had and has an actual situs in this state wherein such business and operations were so conducted. See State ex rel. Rankin v. Harrington, 68 Mont. 1, 217 Pac. 681; Commercial Credit Co. v. O'Brien, 115 Mont. 199, 146 Pac. (2d) 637; In re Small's Estate, 151 Pa. 1, 25 A. 23.

For the reasons above given and upon the authorities above cited the order of the district court to the effect that "no inheritance tax is due the state of Montana from the above entitled estate" finds no support either in fact or in law.

MR. JUSTICE GIBSON, (dissenting).

The opinion of Mr. Chief Justice Adair holds that the mining property operated by the partnership was owned by the individual members of the firm and that therefore it is tangible property, real and personal, that passed by the death of David Perry, and not an interest in a partnership, which the Supreme Court of the United States has held to be "an intangible," within the purview of inheritance tax laws. The opinion of the Court by Mr. Justice Angstman, concurred in by Mr. Justice Metcalf and by Mr. Justice Choate, holds that the property was the property of the partnership, but that the interest of David Perry in the partnership, passing by his death, is not an intangible. The Court's opinion refuses to follow the holding of the United States Supreme Court, de-

clares the judgment of that court is wrong, and holds that such a partnership interest is tangible property. With the opinion of the Court that the property operated by the partnership was partnership property, I agree. From the opinion and holding that the interest of David Perry in the partnership was not an intangible interest, I dissent.

To hold that the property was not owned by the partnership is, in my view of the record, impossible and directly contrary to the realities and the record. True the deed from Perry-Schroeder Mining Company, Inc., a Montana corporation, conveyed the property to the named grantees, reciting the share of each grantee named therein.

The grantees in the deed were the partners in the partnership of Perry-Schroeder Mining Company, and their interests in the firm were in the same shares as designated in the deed of the real property. Under the law as it was when this conveyance was made, it was the rule, generally held, that title to partnership real estate could not be held in the partnership name. This, because the partnership was not considered as a legal entity. Rockefeller v. Dellinger, 22 Mont. 418, 56 Pac. 822, 74 Am. St. Rep. 613. Also see note and cases cited in 1 A. L. R. 564. The Montana statute then in force did provide, however, that "property, whether real or personal, acquired with partnership funds, is presumed to be partnership property." · Sec. 7988, Rev. Codes of Montana 1935.

For the evident reason that a partnership could not take title in the firm name, the conveyance of the property was to the individual partners. This was the usual and accepted manner of taking and holding partnership real estate. Now, however, the uniform partnership act, which was adopted and enacted by Montana in 1947, provides that real estate may be acquired and transferred by a partnership in the firm name. Chapter 251, Montana Session Laws 1947. That the property was owned by the partnership cannot in the face of the record be gainsaid.

This leaves to be considered the nature of David Perry's

interest in the partnership, and how and where devolution of that interest under inheritance tax laws shall be taxed.

The Supreme Court of the United States holds that the interest of a partner in a general partnership is a "chose in action," and that each partner has a right to an accounting and settlement of the partnership business, and, upon dissolution and accounting, to distribution of his share of the proceeds of the assets. The court specifically declares this chose in action to be "an intangible." Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 414, 72 L. Ed. 749. This is the opinion the Court refuses to follow. I cannot repudiate this holding of the Supreme Court of the United States. The rule of property classification thereby stated is too well grounded in the nature of the partnership relation, and in the whole conception thereof, and is too well supported by judicial opinion and decision to permit denial of it here.

In the Silberman case the decedent was a resident of the state of Connecticut. He left real estate and personal property in Connecticut but a large part of his estate consisted of a large interest, as general partner, in the partnership of Openhym & Sons, doing business in the state of New York. This partnership interest of decedent was appraised at more than one million six hundred thousand dollars. The property of the partnership consisted of real estate, merchandise, chattels and credits in the state of New York and also in Connecticut. The principal question in the case was whether the interest transferred by death of decedent in the partnership was taxable by Connecticut, the state of his domicile. The court, after quoting provisions of the New York law to the effect that the partners' right to the specific property of the partnership vests not in the partner's administrator or executor but in the surviving partner; that his right in specific property is not subject to dower and the like, all as is the law in Montana, said: "It is very plain, therefore, that the interest of the decedent in the partnership of William Openhym & Sons was simply a right to share in what would remain of the partner-

ship assets after its liabilities were satisfied. It was merely an interest in the surplus, a chose in action. It is an intangible, and carries with it a right to an accounting." The court specifically pointed out that the fact that among the holdings of the partnership there were buildings and land did not change the nature of the partner's interest in the partnership from that of an intangible to tangible property. The opinion by Chief Justice Taft was concurred in by all the members of the court, and sustained the right of Connecticut, the state of decedent's domicile, to tax the succession as that of the transfer of an intangible.

Our statute provides that "When a partnership exists between the decedent, at the time of his death, and any other person, the surviving partner has the right to continue in possession of the partnership, and to settle its business, but the interest of the decedent in the partnership must be included in the inventory, and be appraised as other property. The surviving partner must give a bond, with sufficient sureties, in favor of the executor or administrator, in a sum at least equal to the value of the interest of the deceased partner in the property of the partnership. * * *" Sec. 10261, Rev. Codes 1935. The surviving partner or partners settle the partnership affairs. They sell the property and assets of the partnership, pay the obligations thereof, the expenses, etc., and account to the administrator for what is due as the decedent's partnership interest upon their liquidation of the partnership. Mayhap the deceased partner was indebted to the firm for more than his share of withdrawals or otherwise. The entire disposition of the partnership assets rests with the surviving partners, subject to accounting to the administrator for what may be due decedent thereon. There is no provision of statute that gives to the heir of decedent any specific property of the partnership. It is clear from the statute that all that the administrator accounts for is the "interest of the decedent in the partnership." That is what is inventoried; that is what is appraised. It is no part of any specific tangible property. And

even though by some agreement between surviving partners and heirs and administrator, some specific property of the partnership is not sold, or if there is property left after the surviving partner accounts to the administrator, which is divided by the surviving partners and the heirs, still the interest that passes upon the death of the partner is the "chose in action," the intangible partnership interest. No specific property of the partnership may be sold by the administrator. Only the "chose in action," the partnership interest, may be sold by him. This court on more than one occasion has stated the oft repeated and settled rule that, "The property of the partnership * * * is in no sense property of the decedent, or property to be administered as a part of his estate." White v. Prahl, 94 Mont. 345, 22 Pac. (2d) 315, 316; Mares v. Mares, 60 Mont. 36, 199 Pac. 267.

"A partner's interest in the partnership" is declared by the Uniform Partnership Act, section 26, Chapter 251, Laws of 1947, to be "his share of the profits and surplus, and the same is personal property." While this act was passed since the instant case arose, the rule has long been the law and the act does not change it. Fourth Nat. Bank v. New Orleans & C. R. R. Co., 11 Wall. 624, 20 L. Ed. 82. Thus, no matter whether the assets of the partnership consist of personal property, or real property, or both, the partner's interest therein is personal property. And it is an intangible. Long before the Silberman case the United States Supreme Court said, "It has repeatedly been determined, both in the British and American courts, that the property or effects of a partnership belong to the firm and not to the partners, each of whom is entitled only to a share of what may remain after payment of the partnership debts and after a settlement of the accounts between the partners." And, quoting from a still earlier decision, the court further said, "A party coming in to the right of a partner (in any mode, either by purchase from such partner, or as a personal representative, or under an execution, or commission of bankruptcy) comes into nothing more than an

interest in the partnership, which *cannot be tangible,* [emphasis mine] cannot be made available, or be delivered but under an account between the partnership and the partner.'' Fourth Nat. Bank v. New Orleans & C. R. R. Co., supra. The Circuit Court of Appeals of the First Circuit also states the rule that the partner's interest is an intangible and says: ''The representative of a deceased partner does not succeed to any right to specific partnership property. In substance the deceased partner's interest, to which his representative succeeds, is a chose in action, a right to receive in cash the sum of money shown to be due him upon a liquidation and accounting.'' McClennen v. Commissioner of Internal Revenue, 131 F. (2d)· 165, 167, 144 A. L. R. 1127.

The Silberman case is cited and followed in the taxation of inheritances by Oklahoma. Wootten v. Oklahoma Tax Commission, 185 Okl. 259; 91 Pac. (2d) 73. No case in a jurisdiction where the rule as to partnership property is as is in Montana, holding contrary to the Silberman case and the other cases classifying a general partner's interest in the partnership as ''an intangible,'' has been found.

Mr. Justice Angstman, writing for the majority of the Court, thinks that the court in the case of Blodgett v. Silberman ''was too much concerned with the character of the property of the decedent in his own estate and not enough concerned with the character of the property passing to the heir,'' and he says that ''Whether the property be tangible or intangible depends upon what the heir receives.'' The answer is, that the heir receives as an inheritance the property of decedent. If some of decedent's property consisted of intangibles that is what the heir receives. It is elementary that in contemplation of law the decedent's property vests in the heir at the time of death. At that time it was an interest in a partnership. That is what the decedent owned; that is what, at the moment of death of decedent, became vested in the heir. At the time of death, by operation of law, the transfer was made. It is that transfer that is taxed by the inheritance tax law;

not any subsequent transfer, transaction, or transmutation. The fallacy of the argument contra is that it assumes the false premise that the transfer to the heir is not at the time of death, as the law declares, but at some indefinite later time after liquidation. There are one or two isolated cases that use language pertaining to "distribution" of estates that might upon casual reading lead one to think the taxable transfer is of the property "distributed" after partnership accounting has been completed and distribution of the estate to the heirs made. The "distribution" is not the "transfer." Such cases are not in point.

It was not necessary to discuss the doctrine of equitable conversion that treats real estate owned by a partnership as personalty for the purposes of the partnership. To be sure the real estate is tangible. But so is the personal property, merchandise, and supplies and what not, owned by the partnership tangible. The question here is simply the nature and character of the partner's interest in the partnership. The corporation likewise owns real estate and owns personal property. No doctrine of conversion is necessary in such case. The widow of a stockholder cannot claim dower in any part of the corporation real estate. But the widow of a partner in a firm can claim dower in any real estate of which he is possessed during coverture. So to protect partners, and creditors of the partnership, in this and other matters, equity says the partnership real estate is converted into personalty for the purposes of the firm.

The property of the partnership here involved is of course assessed and taxed in Montana, where it is situated, just as other like property in the state, whether owned by individuals, corporations, or partnerships, is assessed and taxed. It pays Montana for its protection. The tax here involved is not a property tax; it is a tax upon the transfer to the heir. Sec. 10400.1, Rev. Codes 1935; State v. Walker, 70 Mont. 484, 226 Pac. 894. The property inherited is not the land and dredge of the partnership but the interest of the partner in the firm,

an intangible. The same rule that applies in the case of a corporation owning property in Montana, applies here. The stockholder owns no specific property of the corporation. His shares therein are classified as "intangible."

Indeed, the appellant board of equalization, admits that if the property operated by the partnership was owned by the partnership, and if it was a general partnership, the deceased partner's interest therein was an intangible. In its brief appellant, referring to the partnership, says: "But if it was a general partnership, decedent's interest constituted intangible property, and Chapter 3, Laws of 1945, provides that a tax thereon 'shall not be payable' where reciprocal statutes of exemption exist, as between Montana and California, the State of decedent's residence." The board, however, says the partnership was a "mining partnership" and asserts that a different rule applies.

The opinion of Mr. Chief Justice Adair, although apparently resting on the holding that the property was owned by the individuals comprising the partnership, upon the ground that it was deeded to them as individuals, also asserts that the partnership was a "mining partnership," and therefore, even if owned by such partnership, is it not an intangible. This too is erroneous. A general partnership may, of course, be formed to engage in mining as well as any other business. That is what the record shows was done here. Further, even if it be assumed that the partnership was a "mining partnership," which it was not, the interest of the partner so long as the partnership continues is an intangible. A canvass of the matter seems required.

The Code section 8050, Revised Codes of 1935, provides that, "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same." In such a partnership an express agreement to become partners or to share the profits or losses at mining is not necessary to the formation and existence of the partner-

ship, "the relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the minerals therefrom." Sec. 8051, Rev. Codes 1935.

Section 8054, Revised Codes of Montana 1935, provides that, "The mining ground owned and worked by partners in mining, whether purchased with partnership funds or not, is partnership property." The statute, section 8058, further provides that no member of a mining partnership can, by a contract in writing bind the partnership except by express authority derived from the members thereof. The principal point of difference between a mining partnership and a general partnership, other than the fact that a general partnership results only from agreement of the parties, and a mining partnership results merely from the owning of a mining claim and working it and extracting the mineral from it by the owners, is that "one of the partners in a mining partnership may convey his interest in the mine and business without dissolving the partnership. The purchaser, from the date of his purchase, becomes a member of the partnership." Sec. 8055, Rev. Codes 1935.

From these provisions of the statute, which declare the rules of the common law arising from the customs of miners in the early days of discovery and development of mines, are to be seen the principal points of difference between the ordinary partnership and the mining partnership. In the former no one may be admitted to the partnership unless all the partners consent thereto, but in the latter a person who buys an interest of another in the mine and business ipso facto becomes a partner in the mining enterprise without the consent, and even against the wishes of the other partners. This absence of delectus personae in mining partnerships, and the fact that the partnership is dissolved when the partners cease to work the mine without an agreement to resume, constitute the essential difference between the two forms of association. When a mining partnership is dissolved the members owning the mine

become tenants in common therein. Harris v. Lloyd, 11 Mont. 390, 28 Pac. 736, 28 Am. St. Rep. 475.

With the few exceptions arising out of these two differences, that of the delectus personae, and of the effective cause of the dissolution, the law governing ordinary general partnerships is for the most part applicable to mining partnerships. Dellapiazza v. Foley, 112 Cal. 380, 44 Pac. 727. The rule that a partner is entitled to an accounting applies alike to each one of the partnerships. Hatten v. Interocean Oil Co., 182 Okl. 465, 78 Pac. (2d) 392, 116 A. L. R. 727. The right of a partner to bring suit for an accounting and for dissolution is afforded alike to the partners in both classes of partnerships. Jones v. Clark, 42 Cal. 180.

From this it is to be seen that insofar as the character of the partners' interest in the mining property is concerned, it appears to be as much an intangible as though the partnership were a general one. True, when a mining partnership is dissolved by cessation of working the mine, the owners of the mine become tenants in common of the property, but this is not in point here as it is admitted that the partnership, if a "mining partnership," was not dissolved at the time of the death of David Perry, and therefore if either a general partnership, or a mining partnership, the right of a partner in either form of association being only for an accounting and dissolution and consequent distribution of the assets after payment of debts, his right would be only a chose in action, classed as an intangible, in either case. It is not necessary, however, to decide here upon the distinction between the two forms of partnership. It is well settled that a partnership may be formed as a general partnership with its usual characteristics for the purpose of mining. There is nothing in the nature of mining to prevent an ordinary partnership from engaging therein. Congdon v. Olds, 18 Mont. 487, 46 Pac. 261; Anaconda Copper Mining Co. v. Butte & Boston Mining Co., 17 Mont. 519, 43 Pac. 924; Decker v. Howell, 42 Cal. 636.

Here the articles of partnership of Perry-Schroeder Mining

Company contain provisions that indicate that a general partnership is what the signers of the articles had in mind. The provisions that the business of the partnership shall include "the pledging, mortgaging, exchange or sale of the partnership property" and that "the partnership shall exist so long as it has any indebtedness to Reconstruction Finance Corporation and as much longer as all the parties may desire" are statements of matters not a part of the law-created mining partnership. Especially is this true as to the agreement as to the term of existence. In a mining partnership the term expires when work upon the mine ceases without agreement to resume. Here it continues so long as a certain debt is unpaid, and "all the partners" refers to the persons who signed the articles of agreement. They may continue the partnership as long as all may desire without regard to whether the work continues or not.

But further, the record discloses that two of the partners, and the lawyer who drew the articles of partnership, testified that it was not the intention of the parties to form what is known under the statute as a mining partnership but to form a general partnership with the right of delectus personae, so as to prevent one partner selling his interest in the business and intruding into the partnership as a partner the purchaser thereof, against the wishes of the other partners. This evidence was objected to generally, and upon the ground that it was an attempt to vary, alter and contradict the terms of the written instrument by parol testimony. The objection was overruled and the evidence admitted. This ruling was correct. The evidence did not vary or contradict the terms of the writing. The writing was silent as to delectus personae. But even if it might be said to add to the writing or to vary its terms, it is to be remembered that the rule, that the terms of a written contract cannot be altered or contradicted by parol evidence, cannot be invoked either by or against a stranger to a contract and it is not applicable in a controversy between a party to the contract on the one hand and a stranger to it on the other.

Nissen v. Sabin, 202 Iowa 1362, 212 N. W. 125, 50 A. L. R. 1216. And our statute provides that the parol evidence rule is only applicable "between the parties and their representatives, or successors in interest." Sec. 10517, Rev. Codes 1935; Greening v. Gazette Printing Co., 108 Mont. 158, 88 Pac. (2d) 862.

The importance of this case is not because of the comparatively small tax sum involved. True, the decision may result in the necessity of paying a double tax upon the transfer. California may hold, as it has the power and right to do, that the United States Supreme Court was right in the Blodgett v. Silberman case, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749, and tax the transfer occasioned by the death of David Perry, a resident of that state. And Montana may, and by decision in this case will, also tax the transfer because the partnership property is in Montana. But even this double taxation is not so important as the implication arising from what may be considered as a repudiation of an obligation entered into with other states for the benefit of the residents of the agreeing states, by enactment of the reciprocal inheritance tax exemption laws. When we enacted the statute it constituted an agreement with the other states having like statutes. The faith and honor of the state demands that the agreement be scrupulously observed.

For some time it was ruled by the Supreme Court of the United States that taxation by more than one state of that species of property designated as intangibles, such as stocks and bonds of corporations, would constitute a violation of the Fourteenth Amendment, but the present state of the law in that regard, as announced in Curry v. McCanless, 307 U. S. 357, 59 S. Ct. 900, 83 L. Ed. 1339, 123 A. L. R. 162, and State Tax Commission v. Aldrich, 315 U. S. 789, 62 S. Ct. 490, 86 L. Ed. 1193, is that the state where the owner of the intangible is domiciled at the time of his death may levy an inheritance tax upon the succession thereto, and the state of the corporation issuing the stocks, bonds or securities may tax the succession;

and it is also held that such intangibles may secure a business situs by being kept as a part of the owner's business in a state where such business is transacted, and be taxed therein.

It was to escape from such multiple taxation that the states have enacted these reciprocal tax exemption statutes. When Chief Justice Marshall, in McCulloch v. Maryland, 4 Wheat. 316, 431, 17 U. S. 316, 431, 4 L. Ed. 579, stated as a proposition not to be denied, "that the power to tax involves the power to destroy," he perceived the potentialities of the taxing power at a time when the manner and purpose of its exercise was simple. He stated the truth as a theory. Today it is seen as a practical possibility. To him the purpose of taxation was to secure funds for the maintenance of the government and for its support in performing the functions imposed upon government by Constitution and law. He had not heard of it as a means of redistributing the wealth of the nation, nor as a weapon to be used in the competitive conflicts of economic rivalry.

The effort of the states to simplify inheritance taxation and avoid its duplicate and triplicate imposition seems to me to be right in principle, and the statute should be construed and applied in accord with the spirit and reason of its enactment.

The judgment of the district court in my opinion is correct and should be affirmed.