No. 91-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

RAE SUBDIVISION COUNTY WATER
& SEWER DISTRICT NO. **313,** a Montana
public service corporation,

Plaintiff and Respondent,

v.

FRANK J. TRUNK & SON, a Montana
partnership; FRANK J. TRUNK, JR.,
PATRICIA A. TRUNK: and MARIE DOTING,

Defendants and Appellants.



APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Brian H. Gallik (argued), James H. Goetz,
            Goetz, Madden & Dunn, Bozeman, Montana:
            J. David Penwell, Bozeman, Montana:
            John Brown, Cok & Wheat, Bozeman, Montana

        For Respondent:

            Michael J. Lilly (argued), Berg Law Firm,
            Bozeman, Montana


                            Submitted:  October 10, **1991**

                            Decided:  December 4, **1991**

Filed:

_____
                'Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

RAE Subdivision Water and Sewer District (RAE) sued the Trunks in the Eighteenth Judicial District Court in Gallatin County to collect "annual assessments[1]' for the retirement of bonded indebtedness. The parties stipulated to relevant facts and then filed separate summary judgment motions. The District Court granted RAE's motion and denied the Trunks' motion. The Trunks unsuccessfully moved for reconsideration, and now appeal. We reverse.

The issues are:

1. Did the District Court err in finding that RAE has authority to levy "annual assessments" against the Trunks?

2. Did the District Court err in finding that the Trunks are personally liable for these "annual assessments"?

Because we conclude that RAE had no authority to levy "annual assessments," we will not address the second issue.

RAE is a water and sewer district located outside Bozeman. The Trunks own unimproved real property within the district but that property is not connected to RAE's water and sewer system. The Trunks can demand to be connected to the system at any time, but had not done so at the time of this litigation. RAE finances its physical plant and operations through monthly service charges, special assessments, and "annual assessments." RAE uses the "annual assessments" to retire bonded indebtedness it incurred to finance the construction of its water and sewer system.

RAE bills only those property owners who are actually connected to the system for monthly service charges. It also levies "annual assessments" against all property owners within the district, regardless of whether the property is actually connected to the water and sewer system. RAE has never billed the Trunks for monthly service charges, but it has levied "annual assessments" against them. The Trunks have not paid these "annual assessments" since **1981,** and if the assessments are valid the amount currently delinquent is **$110,196.09.**

In **1985,** RAE sued the Trunks to foreclose a lien for assessments against their property. The District Court dismissed that action on the theory that only Gallatin County could foreclose such a tax lien. RAE did not appeal. Instead, RAE requested Gallatin County to collect the assessments. Gallatin County refused, and RAE sought a writ of mandamus to compel the county to do as it asked. The District Court denied the writ, holding that Gallatin County had no clear legal duty to collect the delinquent assessments. RAE appealed, and we affirmed. *RAE Subdivision v. Gallatin County* **(1988),** 233 Mont. **456,** 460, **760** P.2d **755, 757** (*RAE I*). RAE then filed the instant action and ultimately prevailed in the District Court.

The issue in this appeal is whether the District Court erred in finding that RAE has authority to levy "annual assessments" against the Trunks.

The statutes governing fund-raising devices for water and sewer districts do not expressly provide for "annual assessments." Section **7-13-2301,** MCA, provides in pertinent part:

> **7-13-2301. Establishment of charges for *services.* (1)** The board of directors shall fix all water and sewer rates and shall, through the general manager, collect the sewer charges and the charges for the sale and distribution of water to all *users.*
>
> **(2)** The board *in the furnishing of water, sewer service, other services, and facilities* shall fix such rate, fee, toll, rent, or *other charge* as will pay the operating expenses of the district, provide for repairs and depreciation of works owned or operated by it, pay the interest on any bonded debt, and so far as possible, provide a sinking or other fund for the payment of the principal of such debt as it may become due. [Emphasis added.]

The Trunks argue that this section applies only to users and that it cannot apply to those who are not connected to the water and sewer system. RAE concedes that subsection (1) is limited to users but argues that the words "other charge" in subsection **(2)** authorize it to assess non-users in order to make them pay their fair share of the bonded indebtedness.

Section **7-13-2302 (1),** MCA, describes what happens if the fund-raising devices listed in § **7-13-2301,** MCA, prove inadequate:

> **7-13-2302. Levy of taxes to meet bond obligations and other expenses. (1)** If from any cause the revenues of the district shall be *inadequate to pay the interest or principal of any bonded debt as it becomes due* or any other expenses or claims against the district, then the board of directors must . . . furnish to the board . . . of county commissioners . . . an estimate in writing:
>
> (a) of the amount of money required by the district *for the payment of the principal of or interest on any bonded debt as it becomes due;*
>
> (b) of the amount of money required to establish reasonable reserve funds . . . and

4

> (c) of the amount of money required by the district for any other purpose set forth in this section. [Emphasis added.]

The county commissioners must then levy an appropriate tax on the lands in the water and sewer district. Section 7-13-2302(2), MCA. The Trunks argue that this is the only procedure RAE can use to reach non-users. RAE admits that it did not follow this "tax" procedure but argues that the "tax" procedure becomes necessary only in the event of an emergency.

In RAE's view, the only relevant distinction between the statutes is the identity of the assessing or taxing entity. RAE argues that § 7-13-2301, MCA, lists the fund-raising devices available to the district and that § 7-13-2302, MCA, lists the fund-raising devices available to the county. By this argument, it seems to imply that the revenue powers of the district and the county are co-extensive, and that the district has an "assessment" power very similar to the county's "taxing" power. We disagree.

The statutes governing the county "tax" procedure require notice, § 7-13-2304, MCA, and a hearing, § 7-13-2307, MCA. Section 7-13-2301, MCA, the statute upon which RAE relies for its "assessment" power, does not contain any similar notice and hearing provisions. Thus, RAE argues that it can achieve by fiat what the county cannot do without affording fundamental due process.

We find it instructive to compare § 7-13-2301, MCA, with the statutes governing conservancy districts. These districts have *express* statutory authority to levy assessments without supervision

5

by the county commissioners. Section 85-9-601, MCA. Furthermore, conservancy districts are statutorily obligated to provide due process. Section 85-9-602, **MCA.** In order to conclude that RAE is authorized to levy assessments, we would have to imply that power where it does not exist in § 7-13-2301, MCA. In construing statutes, it is not our role to "insert what has been omitted." Section 1-2-101, MCA. Thus, we decline to read an assessment power into § 7-13-2301, **MCA.**

RAE cites *RAE I* for the proposition that we have already upheld the assessments at issue in this case. In particular, RAE points to the following language in that opinion:

> RAE has the power to sue under § 7-13-2217(1)(b), MCA. We conclude that under that statute and § 7-13-2301, MCA, RAE had the power to bring an action to collect the ***delinquent*** assessments from Mr. Trunk, without referring the same to the county for collection as taxes. [Emphasis added.]

*RAE I*, 760 P.2d at 757. Because the Trunks were not parties to *RAE I*, RAE concedes that collateral estoppel does not apply. Instead, it argues that the quoted language should be extremely persuasive in our resolution of the present appeal. We do not share RAE's assessment of the import of that language.

In *RAE I* we framed the issue as follows:

> Did the trial court err in concluding that Gallatin County did not have a clear legal duty to collect the *delinquent* water and sewer assessments levied by RAE? [Emphasis added.]

6

*RAE I*, 760 P.2d at 756. We held that the county had no duty to collect RAE's assessments under the circumstances of this case because the assessments had not been levied by the county. We said:

> We conclude that the statutes do not set forth a clear legal duty on the part of the county to collect the delinquent water charges. The county can assess taxes sufficient to cover both the bonded indebtedness payments and operating expenses, but in order to do so there must be notice given in advance so that all interested parties may protest the tax levy. Section[s] 7-13-2304 through 2307, MCA. Delinquent water and sewer assessments levied against an *individual* are different from taxes levied against all property within the district under § 7-13-2302, MCA. [Emphasis in original.]

*RAE I*, 760 P.2d at 757.

Neither RAE nor Gallatin County briefed or argued the validity of the assessments themselves. That question was not before us. We held only that § 7-13-2301, MCA, did not impose a clear legal duty upon Gallatin County to collect RAE's assessments once they had become delinquent. *RAE I*, 760 P.2d at 757. Any discussion by this Court of the underlying validity of the assessments themselves was therefore *dicta* and not binding for purposes of this appeal.

We hold that § 7-13-2301, MCA, does not authorize RAE to levy "annual assessments" against non-users. The assessments were therefore void.

Reversed.

_____
Justice

7

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

a

Justice Fred J. Weber specially concurs as follows:

As I agree with the legal analysis of the majority opinion, I join in the holding.

In RAE I, 760 P.2d at 757, we stated:

> RAE has the power to sue under § 7-13-2217(1)(b), MCA. We conclude that under that statute and § 7-13-2301, MCA, RAE has the power to bring an action to collect the delinquent assessments from Mr. Trunk, without referring the same to the county for collection as taxes. We recognize that this conclusion contradicts the ruling of the district court in the first action brought by RAE. Unfortunately, RAE chose not to appeal the judgment in that case.

The foregoing constitute the Court's conclusion that RAE had the power to sue under the statute and the power to bring an action to collect the delinquent assessments from Mr. Trunk. That is the procedure followed in the present action which we are now considering on this appeal.

I am not able to join in the conclusion stated by the majority: "Any discussion by this Court of the underlying validity of the assessments themselves was therefore <u>dicta and not binding for purposes of this appeal</u>." (Emphasis added.) Technically it is true that the stated conclusions were dicta because the only issue presented in the case was whether or not the county had a duty to collect the delinquent assessments; but that does not address the clear suggestion made by the Court of the appropriate procedure.

I believe it more appropriate to acknowledge that we made a mistake in <u>RAE I</u>. It is true that we did not have all of the facts before us in <u>RAE I</u> and it is also true that the present case establishes that the conclusion in <u>RAE I</u> was incorrect. **As** the

9

author of RAE I, I prefer to acknowledge our mistake in reaching the stated conclusions, rather than using a theory of dicta to disclaim responsibility.

_____
Justice

December **4,** 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


James H. Goetz
Brian K. Gallik
GOETZ, MADDEN & DUNN, P.C.
35 North Grand
Bozeman, MT 59715

J. DAVID PENWELL
125 West Mendenhall
Bozeman. MT 59715

John Brown
COK & WHEAT
P.O. Box 1105
Bozeman, MT 59771-1105

Michael J. Lilly
BERG LAW FIRM
910 Technology Blvd., Suite A
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy