No. 91-317

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

MARIE DOTING,

Plaintiff and Cross-Appellant,

-vs-

FRANK J. TRUNK, JR., and PATRICIA A. TRUNK,

Defendants, Respondents and Appellants.

FIRST CITIZENS BANK OF BOZEMAN,

Plaintiff and Respondent,

-vs-

MARIE DOTING, FRANK J. TRUNK, JR., PATRICIA A. TRUNK,

Defendants, Appellants and Cross Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Kenneth E. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John C. Brown; Cok & Wheat, Bozeman, Montana

For Respondent:

J. David Penwell, Attorney at Law, Bozeman, Montana
Gregory O. Morgan, Attorney at Law, Bozeman, Montana.

FILED

MAY 2 1 1992

Submitted on Briefs: April 15, 1992

Decided: May 21, 1992

Filed:

SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This case concerns the dissolution of the Frank J. Trunk & Son Partnership. Plaintiff, Marie Doting (Ms. Doting), initiated the underlying action by filing her complaint and petition to dissolve the partnership. Defendants (Trunks) moved to dismiss the complaint on the grounds that Ms. Doting's request for judicial dissolution of the partnership agreement violated the parties' partnership agreement. The Trunks further filed a motion for a protective order to stay their responses to Ms. Doting's discovery requests until the motion to dismiss had been decided. The District Court for the Eighteenth Judicial District, Gallatin County, denied the Trunks' motion to dismiss and motion for protective order. After a non-jury trial, the District Court ordered the dissolution of the partnership. Trunks appeal and Ms. Doting cross-appeals. We affirm.

We restate the issues as follows:

1. Did the District Court properly order the dissolution of the partnership prior to the winding up of certain contract receivables and the liquidation of certain assets and liabilities?

2. Did the District Court properly conclude that Ms. Doting was not liable for damages or attorney fees incurred by the Trunks as a result of the dissolution of the partnership?

3. Did the District Court properly find the Trunks liable for certain partnership expenses?

4. Did the District Court properly conclude that the Trunks should pay one-half of Mr. Frost's attorney fees related to his

2

representation of the partnership in the Rae Subdivision litigation?

5. Did the District Court err in ruling that Ms. Doting was not entitled to punitive damages?

On May 15, 1975, Frank and Patricia Truck, Marie Doting and Maurice Klabunde (Ms. Doting's ex-husband), executed a partnership agreement which created the Frank J. Trunk & Son Partnership. Frank and Patricia Trunk each owned a 25% interest in the partnership. Ms. Doting and her husband at the time, Mr. Klabunde, owned the other 50% interest. Ms. Doting and Mr. Klabunde subsequently divorced, at which time Mr. Klabunde's interest was assigned to Ms. Doting by Mr. Klabunde pursuant to their decree of dissolution of marriage.

The partnership operated King Arthur's Mobile Home Park. Pursuant to the partnership agreement, Frank Trunk was named general manager for the purposes of operating the King Arthur's Mobile Home Park. The District Court found that from May of 1975, through June 21, 1982, the date of the Klabunde's divorce, Mr. Klabunde spoke for the Klabunde interest in the partnership. The court further found that Ms. Doting's conduct was "totally passive with the exception of signing essential partnership documents." The court found the Trunks were the active managers of the partnership through 1987 and that Ms. Doting was aware of and consented to such management. The District Court found that the business being conducted by the partnership at the date of and after its formation included the development and operation of King Arthur's Mobile Home Park and the platting and subdevelopment of

3

Rae Subdivision, which ultimately resulted in the creation of 50 lots for single and multi-family residential units.

In September of 1981, the partnership sold its chief asset, the King Arthur's Mobile Home Park, to Mr. Clark Bronson (the Bronson contract), with the final payment due in August, 2001. The mobile home park was resold in 1984 to Gary and Loretta Oakland (the Oakland contract). After the sale of the mobile home park, the partnership's primary function was to collect and distribute the proceeds from the sale of the partnership properties. Some of the partnership lots were sold to the Kapinos (the Kapinos contract) with the final payment due in November, 1993. The escrow agent for the Kapinos contract is the First Citizen's Bank of Bozeman, Montana.

Shortly after the Klabundes divorced in June of 1982, the partners had a formal meeting to discuss the wind up and liquidation of the partnership business. The court found that it was the intention of the partners at that time to continue the partnership while it liquidated its assets.

On June 16, 1988, Ms. Doting filed a complaint and petition to dissolve the partnership. Ms. Doting alleged that after her divorce, the Trunks failed to respond to her requests to keep her advised of the status of the partnership and the manner in which the partnership conducted its affairs. She alleged that her efforts to remain informed of the partnership's business became further frustrated by the fact that the Trunks moved out of Montana and conducted all the partnership business from outside the state. Ms. Doting made several specific allegations regarding the Trunks'

4

violation of the Uniform Partnership Act and the partnership agreement, including: (1) breach of the partnership agreement by paying a salary to Mrs. Trunk; (2) Mr. Trunk's amendment of an escrow instruction without resolution and authorization of the partnership and without Ms. Doting's knowledge; (3) refusal to provide Ms. Doting with information concerning the partnership business; (4) refusal to distribute Ms. Doting's share of the partnership funds from the partnership bank account when Ms. Doting demanded such; (5) willful and persistent breach of the partnership agreement and attempt to exclude Ms. Doting from her rights of management; and, (6) that the sale of the King Arthur's Mobile Home Park eliminated the basic purpose for existence and operation of the partnership; and the irreconcilable difference between the partners concerning the partnership made a dissolution of the partnership necessary and equitable. She further alleged that the Trunks violated the implied covenant of good faith and fair dealing and as a consequence she was entitled to recover exemplary and punitive damages.

The Trunks moved to dismiss the complaint on the grounds that Mr. Doting's request for judicial dissolution of the partnership violated the partnership agreement. The District Court denied the motion. Subsequently, the Trunks filed their answer to the complaint, again requesting that the District Court deny the request for judicial dissolution because it would violate the partnership agreement.

After a three-day trial, the District Court issued its findings of fact and conclusions of law, and ordered Ms. Doting to

5

prepare an appropriate judgment reflecting the findings and conclusions. On January 17, 1991, the District Court signed the judgment dissolving the partnership.

The Trunks subsequently moved to amend the judgment and the findings of fact. While this motion was pending, the District Court consolidated this case with the interpleader action entitled First Citizens Bank of Bozeman v. Marie Doting, Frank J. Trunk, Jr., and Patricia A. Trunk. The issues raised in the interpleader action are not relevant to this case.

On February 27, 1991, a hearing was held on the Trunks' motion to amend findings of fact and motion to amend the judgment. The District Court issued its order amending the findings of fact and judgment on March 8, 1991. The March 8th order was amended on April 5, 1991, to address accumulated funds held in escrow. The Trunks appeal and Ms. Doting cross-appeals.

I

Did the District Court properly order the dissolution of the partnership prior to the winding up of certain contract receivables and the liquidation of certain assets and liabilities?

The District Court referred to this case as "The War of Roses", noting that there was such animosity and antagonism between the parties, that dissolution of the partnership was in everyone's best interest. The court stated:

> The conflict manifests itself in the antagonism between the parties, between the attorneys, between the plaintiff and the attorney for the defendants. This in itself reinforces the Court's resolve that the partnership should be dissolved with the words of this Court echoed by the Montana Supreme Court in Heitz -vs [sic] Heitz, 47 St.Rep. 1393 (1990):

6

> We agree and repeat the statements of the District Court that this type of case should be settled between the two parties and that neither party may be satisfied with what the Courts say.

The District Court agreed with the Trunks that the bookkeeping should be done by a qualified third party and appointed Mr. Bailey of the accounting firm of Bailey and Brinkman as the agent to wind up the affairs of the partnership. Mr. Bailey was appointed with the consent of the parties. The court ordered Mr. Bailey to wind up the partnership affairs within 60 days of the date of the court's order.

The District Court concluded that the legal sale of the principal asset of the partnership, King Arthur's Mobile Home Park, was accomplished prior to the institution of this action, and the sale contract, and the Kapinos contract, were easily divisible. The court concluded that the remaining assets of the partnership were also easily divisible. The court ordered that the assets of the partnership be distributed 50% percent to Ms. Doting and 50% to the Trunks. It ordered cash in the partnership checking and savings account be immediately distributed equally to the parties. It further ordered that the Bronson contract and Kapinos contract be distributed equally.

With regard to the Bronson and Kapinos contracts, the court ordered:

> The payments on the Kapinos contract to the escrow agent shall be deposited in the new account to be established for the winding up of the Partnership affairs with the accounting firm of Bailey and Brinkman, Bozeman, Montana, as provided below.

> The payments on the Bronson contract, to the escrow

7

agent the First Citizens Bank, will henceforth be divided by the escrow agent when they are received; one-half (1/2) to [Ms. Doting] and one-half (1/2) to the [Trunks] to be disbursed to the parties by the said Bank as the parties shall instruct the Bank.

. . .

In addition, counsel for [Ms. Doting] shall prepare an assignment from the partnership to the parties of the partnership's interest in the Bronson contract and the Kapinos contract conveying an undivided tenancy in common fifty percent (50%) interest in and to said contracts to each of the parties respectively. . . .

5) The partnership checking and savings account shall be closed and a new account opened by the accounting firm of Bailey and Brinkman, who functioned as the accountants for the partnership previously, . . . The Kapinos payment shall be distributed by the escrow agent for said contract, the Montana Bank of Bozeman, to said accountants to be deposited in the new partnership account. Said funds shall be used by the accountants to pay partnership bills and to wind up the affairs of the partnership with any surplus to be distributed one half (1/2) to [Ms. Doting] and one half (1/2) to the [Trunks]. . . . The subsequent Kapinos payments shall be used to cover the partnership debts until the winding up of the partnership affairs is completed.

The Trunks maintain that the partnership must be allowed to continue in existence for the limited purpose of administering and enforcing the Bronson and Kapinos contract receivables. They further maintain that the District Court's order is unclear as to whether Mr. Bailey is to continue to administer the Kapinos and Bronson contract receivables after the end of the 60-day wind up period. They contend that Mr. Bailey should continue to administer the two contract receivables because the ramifications of the alternative, that the two contract receivables be distributed to the parties as tenants in common prior to their payoffs, would seriously jeopardize the value of the two receivables. Hence, the Trunks maintain that the wind up of the partnership's affairs

8

should be continued until such time as the Bronson and Kapinos contracts are paid in full.

Ms. Doting contends that there is no reason for the partnership to remain in existence because almost all of the lots have been sold by mutual consent of the parties and the Rae Subdivision suit involving the partnership has been finally adjudicated. See Rae Subdivision County Water & Sewer Dist. No. 313 v. Frank J. Trunk & Son (Mont. 1991), 823 P.2d 845, 48 St.Rep. 1065. She maintains that the grounds or reasons for the original creation of the partnership no longer exist following the sale of the principal asset, the King Arthur's Mobile Home Park. She further points out that the Trunks moved to the State of Washington shortly after selling the mobile home park and the partnership has not been engaged in any business other than collecting receivables since that time.

As Ms. Doting points out, the partnership agreement does not provide for termination or dissolution, but rather only provides for a buy-out agreement between partners. However, the Uniform Partnership Act (UPA) specifically provides for the procedure for dissolution of a partnership. In fact, the UPA explains the relationship of winding up, dissolution, and termination of a partnership.

Section 35-10-604(1)(f), MCA, provides that a court may order dissolution if circumstances render a dissolution equitable. Such is the case here. The District Court stated that

> since the partners are unable to agree as to the continued management of the partnership affairs and the partnership agreement does not provide an acceptable

means to settle the problems, and the fact that the main assets of the partnership have been sold, the Court finds, as a matter of law, that the partnership should be dissolved . . .

Section 35-10-601, MCA, provides:

> The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

The Commission Comments to the Montana Code Annotated offer the following explanation for the term "dissolution".

> As used by the legal profession the term "dissolution" designates, not only the single act of the termination of the actual conduct of the ordinary business, but also often the series of acts thereafter <u>until the final settlement of all partnership affairs</u>. It is also frequently said that dissolution, although the word is used to designate only the termination of ordinary business relations, terminates the partnership, it being at the same time explained that the partnership thereafter continues to exist for the purpose of suing and being sued in the process of winding up partnership affairs. Certainty demands that the confusion should be removed if possible. In this act dissolution designates the point in time when the partners cease to carry on the business together; termination is the point in time when all the partnership affairs are wound up; winding up, the process of settling partnership affairs after dissolution. (Emphasis added).

Section 35-10-602, MCA, provides:

> <u>On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed</u>. (Emphasis added).

We conclude that the Trunks' argument that the partnership should remain in existence until the winding up is completed is moot. As explained by the UPA, dissolution does not terminate the partnership for purposes of winding up and suing and being sued while winding up. While the District Court ordered Mr. Bailey to wind up the partnership affairs within 60 days, it is obvious that

10

the Kapinos and Bronson contract receivables will not be paid in full by that time. However, the court further ordered that the subsequent Kapinos payments shall be used to cover the partnership debts until the winding up of the partnership affairs is completed. Under the UPA, the partnership will continue in existence solely for the purpose of winding up until all receivables have been received and payables have been paid.

The Trunks argue that Mr. Bailey should be ordered to continue the administration of the partnership affairs until everything is paid off. We disagree. The partnership will by law remain in existence for purposes of winding up. If the partners have any legal problems with the winding up, they have adequate legal remedies under the UPA. As the court ordered, the payments on receivables collected after Mr. Bailey's 60 days are up will be used to pay any remaining partnership debts and otherwise divided between the parties 50-50.

We agree with the District Court that it is unfortunate that there is such extreme animosity between these parties, and we further agree that due to such animosity, this type of case should be settled between the two parties and not by the courts. We hold that the District Court properly ordered the dissolution of the partnership prior to the winding up of certain contract receivables and the liquidation of certain assets and liabilities.

II

Did the District Court properly conclude that Ms. Doting was not liable for damages or attorney fees incurred by the Trunks as a result of the dissolution of the partnership?

11

The Trunks maintain that Ms. Doting should be liable for damages and attorney fees incurred by them "as a result of [Ms. Doting's] dissolution of the partnership in contravention of the partnership agreement".

As noted in Issue I, the reason for the partnership's existence ceased to exist when the King Arthur's Mobile Home Park was sold and the Trunks moved out of state. Furthermore, as held in Issue I, the partnership agreement did not provide for dissolution, only buy-out.

We conclude that the Trunks' argument on this issue is without merit and affirm the District Court's decision on this issue.

III

Did the District Court properly find the Trunks liable for certain partnership expenses?

The District Court made the following finding of fact:

> 28. The Court finds that the Trunks' expenses in connection with partnership business for travel, lodging, phone, meals, the plumbing license, the newspaper subscription and other related expenses were necessary and reasonable in furtherance of the partnership business. However, one half of all expenses related to this action that may be included in [Ms. Doting's] proposed finding No. 40 should be remitted to [Ms. Doting].

The District Court ordered Ms. Doting to prepare an appropriate judgment reflecting the Findings of Fact and Conclusions of Law. Ms. Doting complied and the court signed the judgment. Paragraph 11 of the judgment prepared by Ms. Doting and signed by the court provided that Ms. Doting was entitled to

> The further and additional sum of $3,295.65 representing one-half (1/2) of the expenses paid by the Trunks out of partnership assets related to this action. (Emphasis

12

added).

The Trunks maintain that the sum of $3,295.65 actually represents one-half of the legitimate expenses of the partnership paid by the Trunks, justified by them at trial and approved by the District Court in the above-quoted Finding of Fact No. 28. Therefore, the Trunks ask this Court to delete this item of damages from the judgment and order Ms. Doting to reimburse this amount to them.

Ms. Doting maintains that her proposed findings of the expenses incurred were the amount of $6,591.30, and that one half of that amount is $3,296.65 - the exact amount found by the court in its judgment. The court had ordered that one half of all expenses related to this action should be remitted to her. Ms. Doting contends that if she does not receive the $3,296.65, she would end up paying a portion of the Trunks' defense costs.

We affirm the determination of the District Court that the Trunks properly should pay for their own defense in this case. We affirm the holding of the District Court that the Trunks are therefore liable to Ms. Doting for $3,296.65 in payment of certain partnership expenses.

IV

Did the District Court properly conclude that the Trunks should pay one-half of Mr. Frost's attorney fees related to his representation of the partnership in the Rae Subdivision litigation?

The partnership's attorney, Mr. Frost, represented the partnership in the Rae Subdivision litigation until Ms. Doting

13

hired her own attorney, Mr. Penwell. Mr. Penwell then filed an answer in the Rae Subdivision case in Ms. Doting's behalf. Mr. Frost continued on as counsel for the Trunks in the Rae Subdivision case.

The District Court ordered that the Trunks pay Ms. Doting one half of the sums paid by the partnership to Mr. Frost for representation of the partnership in the Rae Subdivision suit after Mr. Penwell filed an answer for Ms. Doting in that suit. That amount was found to be $1,309.83.

The Trunks contend that the District Court erred in ordering them to pay that sum because it represents one-half of the sums paid by the partnership to Mr. Frost for his representation of the partnership in the Rae Subdivision litigation before Ms. Doting filed her own answer. They maintain that the partnership should pay all of Mr. Frost's attorney fees and costs arising from his representation of the partnership in the Rae Subdivision litigation because Mr. Doting's attorney merely adopted and ratified Mr. Frost's work in the case.

As we stated in the previous issue, the Trunks cannot expect Ms. Doting to bear the burden of paying for the expenses of both parties. Although on appeal the Trunks contend that Ms. Doting had no authority to fire the partnership attorney and hire her own attorney to defend her in the Rae Subdivision case, they do not argue, nor have they provided evidence for purposes of this case before us, that they previously objected to her separate representation in the Rae Subdivision case or previously argued that she lacked authority to hire separate counsel. They cannot

14

raise an issue of lack of authority for the first time on appeal.

We hold that the District Court properly concluded that the Trunks should pay one-half of Mr. Frost's attorney fees related to his representation of the partnership in the Rae Subdivision litigation.

V

Did the District Court err in ruling that Ms. Doting was not entitled to punitive damages?

Ms. Doting has now conceded that her cross-appeal on this issue was not filed on time. We will not address the punitive damages issue.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

15

May 21, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John C. Brown
COK & WHEAT
P.O. Box 1105
Bozeman, MT 59771-1105

J. DAVID PENWELL
Attorney at Law
P.O. Box 1677
Bozeman, MT 59715

GREGORY O. MORGAN
Attorney at Law
P.O. Box 1530
Bozeman, MT 59771-1530

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy