No. 93-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MARIE DOTING,

        Plaintiff and Respondent,

-v-

FRANK J. TRUNK, JR., and
PATRICIA A. TRUNK,

        Defendants and Appellants.

FILED

13 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

       John C. Brown, Cok & Wheat, Bozeman, Montana

       For Respondent:

       J. David Penwell, Bozeman, Montana

Submitted on Briefs:   June 10, 1993

Decided:   July 13, 1993

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This case concerns the dissolution of Frank J. Trunk and Son Partnership (the Partnership). On June 16, 1988, respondent Marie Doting (Doting) initiated this action by filing a petition to dissolve the Partnership. The District Court subsequently ordered a dissolution of the Partnership and ordered that the winding up be completed within 60 days and that the Partnership be terminated after that time.

We previously addressed this dissolution and termination in Doting v. Trunk (1992), 253 Mont. 350, 833 P.2d 1028 (Doting I). In that opinion, we affirmed the District Court's decision which ordered a dissolution of the Partnership further concluding that the Partnership could not be terminated until the winding up of partnership affairs was completed.

On October 30, 1992, Doting again petitioned the District Court to terminate the Partnership. The District Court ordered that the Partnership be terminated and instructed that the Partnership's assets be distributed to the partners. Appellants Frank J. Trunk, Jr. and Patricia A. Trunk (the Trunks) appeal this decision of the District Court which provides for termination of the Partnership.

The sole issue for our review is whether the District Court prematurely terminated the Partnership.

At time of the first appeal, the Partnership still owned assets, including real property, and was responsible for delinquent taxes for a 16-acre parcel of real property situated in Gallatin

2

County.  Other partnership matters had also not been settled: in particular, complex partnership tax returns needed to be filed and other administrative duties remained concerning money held in a trust account for the partners.

At the time of the hearing on Doting's second petition to terminate the Partnership on November 24, 1992, the Partnership owned but three assets.  They are as follows:

1.  <u>The Bronson contract receivable.</u>  On September 30, 1981, the Partnership sold the King Arthur's Mobile Home Park located in Bozeman, Montana  to Clark Bronson  for **$1,365,000.00.**  The Partnership receives payments in the amount of **$9,321.31** per month on this contract with a balloon payment due on October 1, 2001. Mr.  Bronson subsequently assigned the contract to King Arthur Partners who in turn sold the mobile home park to Gary and **Lorreta** Oakland, d/b/a Oakland Holding Company, on March 1, 1984.  The contract from King Arthur Partners to Oakland was amended on March 25, 1988, and now provides for a final balloon payment on March 1, 1996.  It is possible that the balloon payment due on March 1, 1996 on the Oakland contract could effect the Bronson contract, in which case the final balloon payment would likely be paid to the Partnership on March 1, 1996, the same date the Oakland contract comes due.  Payments  are  received  by  an  escrow  agent  and distributed to the parties.

2.  <u>The **Kapinos** contract receivable</u>. On November 1, 1983, the Partnership sold highway frontage real property to Mr. and Mrs. Kip

3

Kapinos for $150,000.00. The Partnership receives payments of $965.05 per month with a balloon payment due on November 1, 1993.

3. <u>The Cook contract receivable.</u> On October 2, 1992, the Partnership sold 4.88 acres to Gene Cook for $75,000.00, with the Partnership carrying $35,000.00 on a contract for deed. The Partnership receives an annual payment of $7,000.00 on this contract, with a balloon payment due on October 2, 1997. Payments on the Cook contract are also distributed directly to the partners by an escrow agent.

At the time of the November 24, 1992 hearing, the proceeds from the Bronson contract and the Cook contract were being distributed directly to the partners. The proceeds of the Kapinos contract were being accumulated by Philip Bailey, a Certified Public Accountant who was ordered by the District Court to manage the financial affairs of the Partnership during the winding up process. This money has been kept in a Partnership trust account to pay Partnership debts and expenses incurred during the winding up process. At the time of the hearing the balance in that account was $17,167.00. Mr. Bailey had held these funds in trust because the Partnership had been liable for $27,196.34 in unpaid property taxes on a 16-acre parcel of real property. In October 1992, this parcel was sold by Gallatin County at a public tax auction sale which canceled the property tax debt.

Mr. Bailey testified that after he had completed the 1992 tax returns for the Partnership, any further tax returns would not be complex and could easily be handled by others. With the delinquent

property taxes effectively eliminated, the Partnership had no further debts. Therefore, the District Court granted Doting's petition and ordered Mr. Bailey to distribute all but $2000.00 of the accumulated proceeds in the trust account equally between the Trunks and Doting and also ordered that all future payments on the Kapinos contract be distributed equally between the Trunks and Doting. The court further authorized Bailey to draw from the remaining $2000.00 to pay for his services in preparing the 1992 Partnership tax return and then to distribute the remaining proceeds from the trust account. The District Court ordered that the affairs of the Partnership would be decreed wound up and the Partnership terminated on the date of the final distribution to the partners from that trust account.

Did the District Court err by prematurely terminating the Partnership?

The Trunks now argue that Montana law does not allow the District Court to terminate the Partnership and decree that its affairs are wound up until all payments due the Partnership on the three contracts receivable have been received. As stated in the above facts, that date could be as early as October 2, 1997 when the Cook contract should be paid in full, or it could continue until October 1, 2001 by the terms of the Bronson contract.

The Trunks contend that § 35-10-602, MCA, and Doting I require that a partnership must continue until all receivables are received. Section 35-10-602, MCA, provides:

5

On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed.

Section 35-10-602, MCA, is taken from the Uniform Partnership Act (UPA) which has been adopted in Montana and nearly all other states. See Annotations, Compiler's Comments to Title 35, Chapter 10.

We alluded to this statute in our first opinion in this case, stating:

Under the UPA, the partnership will continue in existence solely for the purpose of winding up until all receivables have been received and payables have been paid.

Doting I, 833 P.2d at 1033. The Trunks contend that Doting I, interpreting § 35-10-602, MCA, mandates that the Partnership shall continue in existence solely for the purpose of winding up Partnership affairs until all the receivables discussed above have been received.

The District Court concluded that the winding up was sufficiently completed so that termination of the Partnership was proper. We review a district court's conclusions of law to determine whether the interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601. The Trunks ask that the District Court order be reversed, the Partnership be reinstated and ordered to exist until all receivables have been received. The Trunks argue that this is the law of the case and must be followed.

This argument has no merit. Our comment in Doting I, stating that the Partnership will continue in existence until all

6

receivables have been received is not the law of the case. When this Court states in an opinion a principle or rule of law necessary to the decision, such statement becomes the law of the case and controls throughout its subsequent progress, both in the trial court and upon subsequent appeal. Zavarelliv. Might (1989), 239 Mont. **120, 124**, 779 P.2d 489, 492. Our statement in Doting_I was not such a principle or rule of law necessary to that decision. In fact, it merely discussed procedures to be followed by the District Court after we concluded that the specific issue being addressed was moot.

We have not previously interpreted § 35-10-602, MCA, to determine whether all the Partnership's receivables must be received in order for the Partnership to be wound up and terminated. For the reasons stated below, we now modify the above-quoted statement from Doting_I and hold as follows: In general, a partnership will continue in existence under the UPA solely for the purpose of winding up until all receivables have been received and payables have been paid. The appropriate time for terminating a partnership and declaring that its affairs are settled will be determined by the district court under the particular facts of each case.

Originally, the Partnership was created to operate a mobile home park. That purpose has long since been extinguished: at the time of the hearing, all property had been sold and all debts had been paid, except the final expense for preparation of the 1992 partnership tax return, which was provided for in the **District**

Court's order. The Partnership conducts no business. Now that all the property has been sold, the partners' sole involvement is receipt of distributions of payments on the contracts for deed, yet the Trunks argue that the Partnership existence must continue. Doting seeks to terminate the Partnership and terminate her business relationship with the Trunks.

We note that any partner may obtain a winding up by the court for good cause. Section 35-10-609, MCA. This is what Doting has done in this case. Doting contends that the termination was proper because there is no purpose in continuing the existence of the Partnership now that the 1992 tax return has been filed and remaining funds have been distributed to the parties. The relationship between the Trunks and Doting during these appeals, and prior to Doting's original petition, has been strained. Doting wishes to have nothing more to do with the Trunks and wants to remove any possibility of further exposure to liability which may result from the continuing Partnership.

We emphasize here that all partners have a duty to settle the Partnership affairs. 59A Am. Jur. 2d Partnershiv § 1102 (1987); 68 C.J.S. Partnershiv, § 355 (1950). When a partnership is dissolved and the winding up process is begun, partners have a duty to act in the best interests of the partnership. Generally the best interests of the partnership will be served by winding up the partnership affairs as quickly as possible. Winding up will often require property valuations, prosecuting and defending partnership lawsuits, paying debts and collecting receivables.

8

At this point none of these actions are required in this case. The three contracts for deed constituting the sole assets of the Partnership are the results of sales of Partnership property. These contracts for deed are not presently in default nor are they in danger of default. However, any action which may arise in the future as a result of a default does not have to be taken by the Partnership, it can rather be prosecuted by the parties as owners in common.

In a pre-UPA Montana case, all debts of the partnership had been paid, but the property remained an asset of the partnership. This Court stated:

> The law is well settled that when the partnership is settled and the debts are paid, the real estate of the partnership retains its character as such and is held by the owners as tenants in common. We announced this rule as early as 1887 . . . "The rule [ceases] when the partnership is settled and its debts are. paid. The partners then hold their real estate as tenants in common, relieved of any trust in behalf of the partnership. The weight of American authorities sustains this doctrine."

In re Perry's Estate (1948), 121 Mont. 280, 290, 192 P.2d 532, 537 (citations omitted). Nothing in the UPA dictates a different result here from that of Perry's Estate, which allows property to be held as tenants in common after partnership affairs are settled.

We have looked to our sister states for their handling of winding up and termination under the UPA in similar situations. Cases are uncommon where one or more partners wishes to keep a partnership alive after all partnership affairs are essentially settled. A Pennsylvania case, however, which was decided after the enactment of the UPA in Pennsylvania, stated that its result would

have been the same if decided prior to the UPA as it was under the UPA. See Faust v. Heckler (Pa. 1948), 58 A.2d 147. The Pennsylvania court declared that a tenancy in partnership under the UPA, whereby the partners held real property, would revert to tenancy in common upon dissolution and termination. Faust, 58 A.2d at 149.

In Karber v. Karber (Ariz. 1984), 701 P.2d 1, 3, the Arizona Court of Appeals interpreted the UPA provision requiring partners to "wind up partnership affairs according to law" as meaning that payments to creditors other than partners must first be made, then claims of partners other than repayment of capital and profit, then advancements made by partners, followed by amounts owing to partners in respect to capital, and finally any remaining profits to be distributed. Section 35-10-612(2), MCA, provides the same. In order to effect the distribution of partnership funds during the winding up process in accordance with § 35-10-612(2), MCA, a final accounting is necessary so that all claims and demands arising between the partners can be settled as a result of the accounting. As stated by the Idaho Supreme Court: "[A] final account is the one great occasion for a comprehensive and effective settlement of all partnership affairs." Arnold v. Burgess (Idaho 1987), 747 P.2d 1315, 1320 (quoting Weidlich v. Weidlich (Conn. 1960), 157 A.2d 910).

We have previously stated that "winding up of partnership affairs" is the process of settling partnership affairs after dissolution. Doting I, 833 P.2d at 1033. See also Weisbrod v. Ely

10

(Wyo. 1989), 768 P.2d 171, 174 (generally the winding up encompasses the liquidation of partnership assets, collection and payment of debts and distribution of the surplus to the partners).

Here, the final accounting has been completed and all partnership debts have been covered. The only remaining partnership "affair" consists of the escrow agents' pro rata distributions to the partners when payments are received on the contracts for deed. The District Court has determined that the Trunks are to receive 50% and Doting is to receive 50% of these payments. Thus, the sole question is whether this partnership's winding up is sufficiently completed so that the Partnership can be terminated.

The UPA is to be construed so as to effect its general purpose to make uniform the law of those states which enact it. 1 Rowley on Partnership § 4.4 (2d ed. 1960); § 35-10-104(4), MCA. Generally, in an action to terminate a partnership, a court will order that partnership assets be sold and the proceeds from the sale be distributed according to the statutory priorities. Arnold, 747 P.2d at 1320. Courts have held, however, that alternative distributions of partnership property may also effect a termination. In Arnold, for example, the trial court affirmed a winding up which ordered a money judgment instead of a liquidation sale. Arnold, 747 P.2d at 1323.

We conclude there is no reason to require the Partnership to continue. The UPA has no requirement which would mandate sale of all assets instead of a distribution such as the court has ordered

11

here. This Court has 'previously held that when construing statutes, the interpretation should be reasonable to avoid absurd results. Department of Highways v. Midland Materials Co. (1983), 204 Mont. 65, 71, 662 P.2d 1322, 1325. The Trunks' argument for an interpretation of the statute forcing a partnership to continue simply for receiving payments on sold assets could lead to an absurd result. Contracts for deed, for example, can extend for many years.

We agree with the following quote from the Oregon Supreme Court:

> . . . There is no express provision in [the UPA] which establishes liquidation by sale as the exclusive mode of distributing partnership assets after dissolution. . . . Courts, both prior and subsequent to adopting the UPA, have, under certain circumstances, relied upon their equitable powers to distribute partnership assets without resort to sale.
> In Rinke v. Rinke, 330 Mich. 615, 48 N.W.2d 201, 207 (1951), a suit for dissolution of a partnership, the Michigan Supreme Court . . . interpreted the [UPA] by stating
>
> "* * * [t]he decree of the trial court provided for dividing the assets of the partnerships rather than for the sale thereof and the distribution of cash proceeds. Appellants insist that such method of procedure is erroneous and not contemplated by the [UPA]. * * * Construing together pertinent provisions of the statute leads to the conclusion that it was not the intention of the legislature in the enactment of the [UPA] to impose a mandatory requirement that, under all circumstances, the assets of a dissolved partnership shall be sold and the money received therefor divided among those entitled to it, particularly so, as in the case at bar, where there are no debts to be paid from the proceeds. The situation disclosed by the record in the present case is somewhat unusual in that no one other than the former partners is interested in the assets of the businesses. In view of this situation and the nature of the assets, we think that the trial court was correct in apportioning them to the parties. * * *"

12

The position taken by the Michigan Supreme Court is not an isolated one.

> "* * * [I]n some circumstances and in jurisdictions where the [UPA] is in effect, surplus assets have been apportioned among the partners, and apart from the act distribution of the surplus partnership stock in kind has sometimes been made by the court in cases where there were no firm debts and a division in kind could be fairly and equitably made. * * *" (Footnotes omitted.) 1 Rowley on Partnership, § 38.0, at 737.

Nicholes v. Hunt (Or. 1975), 541 P.2d 820, 827-28 (emphasis supplied). Like the case referred to in Nicholes, other than the the Trunks and Doting, no one is interested in the assets of this business. In this case, we conclude that a distribution of the surplus to the partners and settling partnership affairs does not require that all receivables be received by the partnership.

We further conclude that the winding up of partnership affairs should be completed within a reasonable time. We reach this conclusion also by reference to other courts' interpretations of the UPA. For example, the Kansas Court of Appeals has interpreted the equivalent of § 35-10-601(1)(a), MCA, part of the UPA, as follows:

> We interpret [the UPA statute] as contemplating that the "winding up" of partnership affairs be accomplished within a reasonable time, and that under the facts of the instant case such reasonable time has long since passed. In any event such time could not logically extend beyond the time limits of [statute of limitation for actions of creditors with no notice of dissolution].

Daniels Trucking Inc. v. Rogers (Kan. App. 1982), 643 P.2d 1108, 1111. See also Tucker v. Ellbogen (Colo. App. 1989), 793 P.2d 592 (the winding up partner has the affirmative fiduciary duty to wind up partnership affairs as expeditiously as possible and so as not

13

to cause waste until the partnership assets have been divided and the liabilities have been satisfied): Gibson v. Dueth (Iowa 1978), 270 N.W.2d 632 (winding up usually entails the time necessary for the partners to finish old business, collect and pay debts, and finally distribute remaining assets to the partners).

We agree with the Kansas court that partnership affairs ought to be wound up within a reasonable time. In a case such as ours where a contract for deed may continue for a number of years, it is not reasonable to force the parties to remain partners where they may be subject to liability by acts of other partners for many years into the future. All Partnership debts have been paid in this case and no lawsuits are pending. The Trunks have not presented a convincing reason for continuing the Partnership.

Without a convincing reason for continuing a partnership, § 35-10-602, MCA, does not require that every transaction be completed before a partnership can be terminated. A partnership should be wound up within a reasonable period of time according to the circumstances of each case. Under the circumstances of this case, an effective settlement or winding up of all Partnership affairs has been achieved. Any action which may become necessary in the future to collect on defaulted contracts can be taken by the parties as owners in common, rather than as tenants in partnership.

We hold the District Court did not err when it determined that Partnership affairs had been wound up and ordered that termination of the Partnership would be effective with the date of Mr. Bailey's final distribution to the parties from the trust account.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

15