No.   94-402

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

JOHN WILLIAMS and BARBARA WILLIAMS

   Plaintiffs and Respondents,

   -v-

ALVIN DeVINNEY and DONNA DeVINNEY,

   Defendant and Appellant.

FILED

MAR 07 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Richard DeJana, Kalispell, Montana

        For Respondent:

        Marshall  Murray,  Murray  &  Kaufman,  Kalispell,
        Montana


                         Submitted on Briefs:  January 12, 1995

                                   Decided:  March 7, 1995

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the assessment of damages by the Eleventh Judicial District Court, Flathead County. We affirm in part and reverse in part, with instructions for the District Court to modify its judgment by $1,100.

We consider the following questions on appeal:

I. Did the District Court err in determining the damage figures owed to the Williamses by using the figures presented by the Williamses' expert witness?

II. Did the District Court err in failing to award DeVinney his offset award from the first case?

This is the second time this matter has been before this Court. In Williams v. DeVinney (1993), 259 Mont. 354, 856 P.2d 546 (Williams I), we held that Alvin DeVinney (DeVinney) was liable for misrepresentation concerning the real estate he sold to the Williamses. The original controversy arises from the sale of a modular home and a tract of real property upon which the home was located. The Williamses purchased the real property from DeVinney and the modular home from Kalispell Home Center, Inc., for whom DeVinney was the selling agent.

DeVinney suggested the use of concrete piers to support the modular home, representing that the piers would provide an adequate foundation. DeVinney assured the couple that the ground was sound and that the piers were an adequate foundation. However, the ground was not sound because a house had burned on the piece of property and been bulldozed over. Therefore, the piers that were

2

set did not support the home properly, resulting in damage to the home.

The trial court determined that DeVinney was guilty of negligent misrepresentation. We remanded the case for trial on the issue of damages. At the second trial, the court followed the general damage outline set out by the first trial court. The court awarded $20,440 to the Williamses. DeVinney appeals the Findings of Fact and Conclusions of Law issued on May 19, 1994, by the court.

I.

Did the District Court err in determining the damage figures owed to the Williamses by using the figures presented by the Williamses' expert witness?

The court made the following findings of fact:

1. Plaintiffs are entitled to damages as a result of the negligent misrepresentation of Defendant Alvin DeVinney in accordance with Judge Erickson's Findings of Fact and Conclusions of Law entered January 6, 1992, and the Order of the Montana Supreme Court above referenced.

2. Specific damages, which include damages outlined by Judge Erickson in his January 6, 1992, decision and which, by implication, are necessary to satisfy the general directives of that decision, are as follows:

   a. Remove porches and deck, remove home, pour foundations in accordance with CABO specifications, replace home in accordance with manufacturer's original requirements, seal all joints in accordance with manufacturer's recommendations and reattach porches and deck.............. $ 12,000

   b. Reseal all exterior doors and windows, refinish and/or replace water damaged trim and adjust all doors and windows for proper operation..................... $ 2,000

   c. Remove 260 cubic yards of in-place soil

d.  Furnish and place 260 cubic yards of compacted topsoil at $ 7.00 per cubic yard in-place after compaction........ $  3,900

e.  Furnish and replant small shrubs and trees planted by plaintiff in the area of soil removal....................... $    690

                    SUBTOTAL      $ 20,670

        Engineering fee...... $  1,520
        Backhoe............. $     70
        Living expense during
        repair for four people:
        10 days @ $180 per day $  1,800
                                 ----------
                    TOTAL        $ 24,060

3.  The cost of installing the proper foundation for Plaintiffs' home is $3,620, which sum should be deducted from the above found damages.

DeVinney argues that the present court did not follow the outline of damages as set down by the first court and that many of the figures in the damage award are not "incidental" to the moving of the house.  Further, DeVinney argues that the basis for these figures is hearsay and that the figures themselves cannot be substantive evidence.  DeVinney argues that the expert witness who testified was not the witness that the Williamses stated in discovery that they would put on the stand.  It is DeVinney's contention that the plaintiffs' expert, Robert Hafferman (Hafferman), admitted that he was not an expert qualified to make these figures.

The Williamses argue that the court had the discretion to believe whichever witness it considered to be more credible. Further, the Williamses contend that their witness is clearly qualified and that he was permitted by Montana law to testify based upon any information that he himself felt to be appropriate.

4

A court has broad discretion in determining whether a witness may qualify as an expert. Little v. Grizzly Mfg. (1981), 195 Mont. 419, 636 P.2d 839. A close review of the record discloses that Hafferman has been a civil engineer for forty years and was thoroughly qualified to testify concerning the various amounts of damage. Hafferman did extensive testing on the piece of ground in order to determine the problem. By way of contrast, DeVinney's expert witness was not a civil engineer and looked at the property for an hour. The District Court did not abuse its discretion in accepting Hafferman as an expert witness.

A district court's findings of fact are reviewed as to whether they are clearly erroneous. Williams v. DeVinney (1993), 259 Mont. 354, 856 P.2d 546. In reviewing a district court's findings of fact, the Supreme Court will determine if substantial evidence supports the findings and, if so, if the effect of the evidence has been misapprehended by the court, or even if not misapprehended, whether findings leave this Court with a firm conviction that a mistake has been made. Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Foundation, Inc. (1993), 259 Mont. 279, 856 P.2d 525. We will review a district court's determination of the law as to whether it is correct. Doting v. Trunk (1993), 259 Mont. 343, 856 P.2d 536.

DeVinney would have us dismiss the figures submitted in Hafferman's report as hearsay. Hearsay evidence is an unsworn statement made out of court with no opportunity afforded to confront the speaker as to the veracity of the fact. Matter of Swan (1977), 173 Mont. 311, 567 P.2d 898. However, there is no

5

requirement that the facts upon which an expert relies in forming an opinion be themselves admitted in evidence. Matter of J.M. (1985), 217 Mont. 300, 704 P.2d 1037. In fact, the estimates of damage used in Hafferman's report were his own projections based upon updated cost information from others. As long as Hafferman is an expert in his field and DeVinney was presented with the opportunity to cross-examine, then Hafferman can testify to his opinions based upon information provided by others. His testimony indicates that this is what happened. The District Court did not err in refusing to consider this evidence hearsay.

The court followed the figures presented by Hafferman. Contrary to DeVinney's assertion that Hafferman was not listed as testifying to the cost of foundation replacement, a review of the record indicates that in Williamses' answer to DeVinney's Interrogatory No. 1, the Williamses noted that Hafferman would testify to "the method and expense of curing the damages incurred by Plaintiffs." While two other witnesses were also scheduled by the Williamses to testify, but did not, that fact does not negate the fact that DeVinney had full knowledge of Hafferman's testimony as well as the content of that testimony. A review of the transcript indicates that DeVinney had a chance to cross-examine Hafferman as well as a chance to voir dire him on the stand.

A review of the record also reveals that Hafferman never admitted to not being an expert. In fact, he quickly rebutted counsel's accusations of lack of expertise by stating that he was skilled at making similar cost estimates--he just did not make the original underlying cost estimates. Hafferman did testify as to

6

the generally accepted procedure for accepting bids such as the ones he presented to the court.

Hafferman did admit that the two witnesses who did not testify and who submitted the figures that Hafferman ultimately used were experts at setting the possible price of repair work. That does not mean that Hafferman's forty years of construction work and accepting bids on repairs from other workmen should be disregarded. Nor does it mean that Hafferman admitted that he was not an expert.

During the hearing on damages, DeVinney attempted to get Hafferman to admit that all but part of the first total ($12,000) were not attendant to the curing of defects in the foundation. When we sent this case back in the original appeal, we did so partly because the only evidence that supported the figures was in the form of affidavits. Williams I, 259 Mont. at 362, 856 P.2d at 551. We stated in that appeal that the court had ordered a determination of general damages and that a further hearing would be necessary to determine the specific amount. We stated that "[t]he court should properly include in its damages award the specific expenses which it finds, by implication, are necessary to satisfy the general directives of the earlier decision." Williams I, 259 Mont. at 362, 856 P.2d at 551. Hafferman testified that all the projected figures of damage he had submitted on his report were incidental to damage caused by having to move the modular home.

He was vigorously cross-examined by counsel whose questioning elicited the response that the totals for shrub replacement etc. were not "directly" related to the moving of the home or replacement of the foundation. The fact that the damage was not

7

directly related to the cost of curing the foundation, does not mean that the costs were not "necessary to satisfy the general directives of the earlier decision." The totality of Hafferman's testimony shows that he believed that the totals he submitted were accurate and necessary.

In its conclusions of law, the court deducted from the subtotal of all individual damage figures the amount of $3,620 which it determined that the Williamses would have had to pay for a full foundation had the current turn of events not occurred. Hafferman testified to the amount and to his way of determining that amount. DeVinney's expert presented an amount for the repair of the foundation without presenting any testimony as to how he had arrived at a total figure that was about $3,900 less than Hafferman's. Credibility of a witness is within the trial court's discretion. Keebler v. Harding (1991), 247 Mont. 518, 807 P.2d 1354. The District Court did not abuse its discretion in using Hafferman's testimony as compared to DeVinney's expert.

We conclude that substantial evidence exists to support the District Court's use of Hafferman's figures as the appropriate damage totals. We further conclude that the court did not misapprehend the evidence that it had before it, nor are we firmly convinced that any mistake has been made with the court's use of, and subsequent awarding of, the Hafferman damage totals.

II.

Did the District Court err in failing to award DeVinney his offset award from the first case?

The District court in the initial 1992 action awarded DeVinney

8

offset award from the first case?

The District court in the initial 1992 action awarded DeVinney $1,100 because plaintiffs referred to DeVinney publicly as a crook. When the case came back to the District Court, it did not mention this amount in its subsequent ruling.  The Williamses do not address the absence of this amount on appeal.

We affirm the judgment of the District Court with the exception that the District Court is instructed to subtract $1,100 from its May 19, 1994 judgment of $20,440.

Affirmed in part, and reversed in part, with instructions to the District Court to modify its previous judgment by $1,100.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to the West Publishing Company.

_____
Justice

We Concur:

_____

_____

_____
Justices

March 7. 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following  named:


Richard DeJana, Esq.
200 First Ave. East
P.O. Box 1757
Kalispell,  MT  59903-1757

Marshall  Murray
Murray & Kaufman, P.C.
P.O. Box 728
Kalispell,  MT  59903-0728

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy
